[No. C056930. Third Dist. Oct. 8, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ALBERTO MIRALRIO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III., IV. and V. of the Discussion.

**COUNSEL**

Mark L. Christiansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Julie A. Hokans and Judy Kaida, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—Defendant Jose Alberto Miralrio appeals following his conviction on six counts of sex offenses with minors (Pen. Code, §§ 261, 269, 288)[1] with enhanced sentencing due to multiple victims (§ 667.61, subd. (e)(5))[2] and one count of battery (§ 242). Defendant contends the trial court (1) improperly allowed the prosecution to amend the information during trial, (2) misadvised him of the sentencing consequences of going to trial, (3) improperly handled a request for new trial and new counsel, and (4) improperly imposed a fine (§ 243.4). Defendant also contends there is an inadequate appellate record regarding jury instructions, and the jurors' set of written instructions improperly included headings. In the published portion of the opinion, we shall reject defendant's first two contentions. In the unpublished portion, we strike the section 243.4 fine but otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

An original information charged defendant with nine counts of sex offenses against three victims and contained at the end of the pleading an allegation of a section 667.61, subdivision (e)(5), enhancement for multiple victims, applicable "as to Counts One through Nine."

A first amended information, filed just before trial, deleted one count, leaving eight counts, and moved the section 667.61 allegation to the first page of the pleading under count one, with no indication it applied to all counts.

After all evidence was adduced at trial and before closing arguments, the trial court allowed the prosecution to file a second amended information to correct the "clerical error" and reinstate the multiple victims allegation as to *all* counts.[3]

The second amended information charged defendant as follows:

Count one—Committing a lewd and lascivious act with the requisite intent on June 17 and 18, 2006, putting his hand on the buttocks of victim I., a child under the age of 14 years, in violation of section 288, subdivision (a).

---

[1] Undesignated statutory references are to the Penal Code.

[2] Section 667.61 provides in part that, "any person who is convicted of an offense specified in subdivision (c) [including the offenses charged against defendant] under one of the circumstances specified in subdivision (e) [including offenses against more than one victim] shall be punished by imprisonment in the state prison for 15 years to life." (§ 667.61, subd. (b).)

[3] We refer to this pleading by its label of *second* amended information, even though defendant observes the court previously allowed an amendment by interlineation regarding a date in the first amended information.

Count two—Rape of victim B., a child under age 14 and more than 10 years younger than defendant, between November 7, 1997, and November 6, 1998 (§§ 261, subd. (a)(2) [rape by means of force, violence, duress, menace, or fear of bodily injury], 269, subd. (a)(1) [aggravated sexual assault of child]).

Count three—Lewd and lascivious act (defendant put his fingers in B.'s vagina) by use of force, violence, duress, menace, and threat of great bodily harm, between November 7, 1997, and November 6, 1998 (§ 288, subd. (b)(1)).

Count four—Rape of B. between August 7, 1998, and November 6, 2000 (§§ 261, subd. (a)(2), 269, subd. (a)(1)).

Count five—Lewd and lascivious act (finger in victim's vagina) on B., by use of force, etc., between November 7, 1998, and November 6, 2001 (§ 288, subd. (b)(1)).

Count six—Lewd and lascivious act (defendant's hand to victim's breast) on victim A., a child under the age of 14, between June 14, 2002, and June 13, 2003 (§ 288, subd. (a)).

Count seven—Lewd and lascivious act (defendant's finger to victim's vagina) on A. (§ 288, subd. (a)).

Count eight—Lewd and lascivious act (finger to vagina) on A., between June 14, 2002, and June 13, 2003 (§ 288, subd. (a)).

Evidence adduced at trial included the following:

Defendant was born in 1976. All three victims are his half sisters who lived with defendant's father at the time.

### Evidence Regarding I. (Count One)

I. testified (regarding an uncharged incident) that one summer night in 2005, when she was 12, she awoke during an overnight stay at defendant's house to find her pajama pants pulled down and defendant in the room. Defendant tried to hide. I. never stayed there again because she did not "trust the house."

One night around Father's Day in 2006, I., then age 13, was awakened when someone entered her room. I. opened her cell phone for light and recognized defendant. He told her to be quiet and grabbed her buttocks

(count one). She first testified she did not remember whether he rubbed her buttocks, then testified he did rub in circles. I. tried to leave. Defendant grabbed her shoulders from behind. She broke away and ran to A.'s room. After phoning B. at a friend's house, they told their father, who telephoned the police.

### Evidence Regarding B. (Counts Two, Three, Four, and Five)

B. testified that, when she was around 11 years old, she awakened in her bedroom to find defendant (then age 21 or 22) touching her breasts with his hands. She told him to stop and tried to push him away. He told her to be quiet. He touched her vagina through her clothing, reached inside her underwear, and inserted his fingers into her vagina (count three). He took off her clothing. He inserted his penis in her vagina a couple of times (count two). He told her not to say anything and left.

When B. was 12, she was staying overnight at defendant's house, when defendant entered the room B. was sharing with defendant's daughter. He grabbed B.'s leg and tried to flip her onto her back. She pushed him off, but he grabbed her leg again, flipped her over, and pulled off her clothes. He told her to be quiet. He spit into his hand and rubbed the spit on his penis. She tried to hold her legs closed, but he forced them apart and inserted his penis in her vagina more than once (count four). He left when his daughter started to wake up. B. was too scared to tell anyone at the time (though she confided in a friend years later, months before the matter was reported to law enforcement, after B. learned defendant touched A.).[4]

Another day, when B. was home alone, defendant entered the house and, over the victim's resistance, threw her on the bed, touched her vagina through her clothes, moved his hand underneath her clothes, and inserted his fingers in her vagina (count five).

B. testified she told her sister-in-law N. that she (B.) did not want to press charges because defendant is her brother, and she does not want her nieces to have to live without their father. B. denied saying she was pressing charges "to prove a point" to her father.

### Evidence Regarding A. (Counts Six, Seven, and Eight)

A. testified that, one summer night when she was 11 years old, she was sleeping in the bedroom of defendant's daughter. Defendant came into the

---

[4] Defendant mentions the statute of limitations in a footnote in his statement of facts. We need not address undeveloped points inadequately briefed. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

room and inserted his fingers in her vagina (count seven). At trial, A. said defendant did not do anything else. A. said she did not remember telling a sheriff's investigator that defendant first put his hands on her breasts and stomach (count six), or that defendant left the room and then came back and inserted his finger in her vagina a second time (count eight). If she did say that to an investigator, it was untrue.

A sheriff's investigator testified A. told him defendant put his hands on her breasts and stomach, put his fingers in her vagina, left the room, came back, and put his fingers in her vagina a second time.

### Taped Interview of Defendant

A sheriff's investigator testified he conducted a videotaped interview with defendant on August 29, 2006, during which defendant admitted contact with private parts of the three victims, including sexual intercourse with B. (which he viewed as consensual). A DVD with excerpts of the videotaped interview, as well as a written transcript, were admitted into evidence.

### The Defense

Defendant did not testify but presented as witnesses his father (who is also the father of the victims), brother, and sister-in-law, all of whom questioned the victims' veracity. G., who is the father of defendant and the victims, testified he brought the girls (who live with him rather than their mother) to the sheriff's office to give statements at the direction of a detective. The girls were nervous. The father did not speak with them about the case "because it makes them feel bad." The father testified he did not believe two of his daughters—B. and A. He thinks they exaggerated a lot of things out of anger. He testified that B. (who by then had turned 18 and no longer lived with her father) was "angriest," and he did not know why. He admitted he went to the district attorney's office and asked for the charges to be dropped. The father asked that the investigators "really be strong" with his daughters "to get the truth out." The father testified he loves all his children. The father tried to interject that B. was raped by other persons at age 16 and got pregnant, but the trial court sustained objections and instructed the jury to disregard the comment about pregnancy.

J. testified he is full brother to the victims and half brother to defendant. J. testified A. and I. told him defendant never touched them. J. and his father went to the district attorney's office to try to get the charges dropped.

N. testified she is "married in association by [J.]" She is really close with the victims and has seen defendant (her brother-in-law) only three or four times. The previous September, B. was crying and, when pressed, said defendant had "done things to her" when she was seven or eight years old. B. said her father did not believe her, and she was at odds with him about it. N. inferred B. wanted to press charges to prove to her father that she could live her own life. N. said A. stated B. was telling her she had to speak about it. N. got the impression B. was putting pressure on A. According to N., A. said defendant's acts involved "just touching," but she was being told things supposedly happened to her that she did not believe happened. A. did not want her brother to go to jail for "stupid things" and just wanted the whole thing to go away. N. said I. said defendant was drunk one night and fell onto the bed and touched her stomach but left when she got up and used her cell phone light to see who it was. N. said she, J., and the father went to try to get the charges dropped at the request of the victims. N. testified she told the detective B.'s "stories kept changing . . . ." N. testified B. spent a lot of time at defendant's house when B. turned 16 and started to drive and smoke marijuana. The trial court interjected, "Okay. You know what? You know that's inappropriate, don't you?" N. said no. The court said, "Well, that was non-responsive. I strike that from the record." N. testified she told the detective that B. had been pressuring A. and I. into pressing charges, and "that's from what the girls have told me." However, N. earlier testified "[I.] never actually told me that she was being pressured . . . ." N. insisted she is not taking sides.

The jury found defendant not guilty on count eight (second alleged incident of finger to vagina regarding A.), guilty of a lesser offense of battery (§ 242) on count five (finger in vagina with force, regarding B.), and guilty on all other counts.

The trial court sentenced defendant to prison for a total term of 90 years to life (six consecutive indeterminate terms of 15 years to life on counts one, two, three, four, six, and seven, pursuant to § 667.61). On the count five battery, the court sentenced defendant to a concurrent misdemeanor jail term of six months.

## DISCUSSION

### I. *Amendment*

Defendant claims the trial court denied him due process and abused its discretion by allowing the prosecution to file a second amended information

during trial to attach to each count the multiple victim allegation (§ 667.61, subd. (e)(5), also known as "the one-strike" law), whereas the first amended information charged the multiple victim allegation as to count one only. We find no grounds for reversal.

## A. *Background*

We set forth the background in detail because it gives rise not only to defendant's contention about leave to amend, but also his contention (which we discuss *post*) that he was misadvised about his potential sentence when he rejected the prosecution's plea offer.

At the end of the original information appeared the allegation that "as to Counts One through Nine, that [defendant] committed the above described offense(s) against two or more victims, within the meaning of Penal Code Section 667.61(e)(5)." The parties appear to agree this subjected defendant to consecutive terms of 15 years to life on each count.

The first amended information (which deleted one count) moved part of the quoted sentence to the beginning of the pleading, following count one, with no mention of application to all counts. On its face, this pleading subjected defendant to only one term of 15 years to life under section 667.61 (though defendant notes on appeal the two rape charges subjected him to two terms of 15 years to life under § 269, subd. (b)).

The record shows the following exchange when the case was called for trial:

"THE COURT: All right. My understanding is, Ms. Steber [prosecutor], you're willing to advance the offer of 30 years to life today and up until jury selection would commence on Tuesday?

"[Prosecutor]: That's correct, Your Honor.

"THE COURT: And what is [defendant's] full exposure in this case?

"[Prosecutor]: I believe he's looking at a total of 60 to life, plus another 3/6/[or]8, so another 8; 60 to life plus 8.[5]

"THE COURT: All right. And you're willing to keep that offer open until we commence with jury selection on Tuesday [July 24, 2007]?

---

[5] This was wrong, even going by the face of the pleading in effect at the time, the first amended information. Defendant says that pleading would have yielded a possible sentence of 85 years. ·

"[Prosecutor]: That's correct, Your Honor."

At the close of proceedings on July 23, before jury selection, the following exchange occurred:

"THE COURT: . . . Mr. Roth [defense counsel], I just want to confirm about you obviously you [*sic*] conveyed the offer to your client of 30 years to life.

"[Defense counsel]: I did, Your Honor, and he's not inclined to accept that.

"THE COURT: You're not going to accept that, Mr. Miralrio [defendant]?

"THE DEFENDANT: No."

After the presentation of all evidence but before closing arguments, the defense objected to the proposed verdict form because it asked the jury to find the multiple victim allegation as to each count. The prosecutor asked the court for leave to file a *second* amended information to correct a "clerical error" which resulted in omission from the *first* amended information of an allegation in the *original* information that *all* counts were subject to enhanced sentences for multiple victims under section 667.61. The first amended information alleged section 667.61 as to count one only.

Defendant opposed the motion to amend.

Discussion of the matter between court and counsel included reference to a plea offer, as follows:

"[Prosecutor]: The People have proceeded throughout this trial with the understanding—and we've had multiple discussions about how this was a multiple life case, multiple terms of life. And that was understood from the very beginning of this case. [¶] The People have alleged the multiple victim enhancement for three victims, and that's been the understanding through the case.

"THE COURT: It's my recollection that when this case was assigned to this department, that the People made an offer to [defendant] on the record, and that offer contemplated the multiple victim enhancement because you indicated at the time, [prosecutor], that the Defendant was facing a maximum of how many years to life?

"[Prosecutor]: I don't remember what I said, but we were talking about multiple life terms. Multiple, not one. And that was the understanding. And

we've proceeded that way throughout this trial. Not one life term, multiple life terms. And that was the offer from the beginning was multiple life terms.

"THE COURT: In fact, [defendant] declined the offer that was presented before jury selection commenced of 30 years to life.

"[Prosecutor]: I do remember the Court asking the People if the People would offer one life count, and the People did not offer one life count. We offered multiple—our offer was two life counts, and that was a pretrial offer. And the understanding was there was multiple at the time nine life counts, now eight life counts.

"[THE COURT:] If the intent [of] the People at the time [was] that it was sufficient he face one life term [an interpretation of the first amended information urged by defense counsel], I think that is dispelled by what the offer was pretrial or, well, pre-jury selection in this case."

Defense counsel argued defendant could have been subjected to multiple life terms even if the prosecution alleged only one section 667.61 enhancement. Defense counsel said that, "to the best of my recollection," there were three possible life sentences. This apparently referred to the fact that the rape counts subjected him to two 15-year-to-life terms under section 269.

After an overnight recess, the trial court allowed the amendment, stating, "it appears there was a clerical error attached to Count One, but that in any event defense has always been on notice with respect to that allegation. And the Court further reflected upon the discussions that were held prior to the selection of the jury. [¶] The Court's of the belief that we all understood that that enhancement attached to each count as a multiple victim enhancement, not[]withstanding what I think was a very good argument put forward by [defense counsel][.] [¶] . . . [¶] [I]n addition, I do not believe that [defense counsel], you would have defended your client any differently even if the Court were to agree that that allegation only attached to Count One. I think the defense would have been the same. [¶] I think, from the perspective of this case, that has always been the count that was the least egregious as far as if the jury believed the statements and testimony of the named victims in this case, that count was always the less egregious . . . . [¶] For all of those reasons, I'm going to permit the district attorney to amend her information, which will now be a second amended information, to reflect what I believe ultimately was a clerical error, but in any event does not substantially prejudice [defendant] in any regard."

After trial, at sentencing the prosecutor urged the court to adopt the probation officer's recommendation of a sentence of 90 years to life. Defense counsel acknowledged he had received a copy of the probation report and had had adequate opportunity to review it with defendant. The defense never expressed surprise at the 90-year figure, nor did it claim the earlier misadvisement caused defendant to reject the plea offer.

B. *Analysis*

■ Section 1009 provides a trial court may allow amendment of an information "at any stage of the proceedings," and the trial shall continue unless the defendant's substantial rights would be prejudiced, in which event the court may grant a postponement. We review the trial court's decision for abuse of discretion. (*People v. Bolden* (1996) 44 Cal.App.4th 707, 716 [52 Cal.Rptr.2d 485].)

The trial court allowed the second amendment based on the court's conclusions (1) there was clerical error in the first amendment, which omitted the original information's allegation that the multiple victim enhancement applied to each count; and (2) defendant would not be prejudiced because all parties always understood that the prosecution was seeking the section 667.61 enhancement on all counts and the defense would have been the same.

Defendant argues he was prejudiced as demonstrated by defense counsel's argument that he focused on count one because of its attached enhancement allegation. Defendant says there is not the slightest suggestion the judge did not believe defense counsel. However, this argument ignores the trial court's findings that "we all understood that that enhancement attached to each count . . . ," and "I do not believe that [defense counsel] . . . would have defended your client any differently . . . ."

Defendant argues there is no basis for the trial court's belief. However, there is a basis, in that the trial court had its own recollections.

As noted by defendant, there is a basis upon which the trial court might have reached a different decision. Thus, when the prosecution's plea offer of 30 years to life was put on the record before jury selection, the court asked what was defendant's "full exposure in this case," to which the prosecutor answered, "I believe he's looking at a total of 60 to life . . . plus 8." This was a mistake, as both sides agree on appeal, but nevertheless was closer to the facial allegations of the first amended information (with only one § 667.61 allegation) than to the original information. Additionally, defense counsel, in opposing the posttrial amendment, argued (somewhat inartfully) in the trial court that the pretrial offer of 30 years to life did not necessarily translate to

two counts *enhanced by section 667.61* because the first amended information charged defendant with one section 667.61 allegation plus two other "life counts," by which defense counsel presumably meant (as more clearly expressed in his appellate brief) the two counts of aggravated sexual assault (rape) of a child, for which section 269, subdivision (b), would impose a sentence of 15 years to life.

That there might be a basis for the trial court to reach a different conclusion does not render the court's decision an abuse of discretion. The trial court expressly considered and rejected defendant's argument that the first amended information was not clerical error but rather a deliberate decision by the prosecutor that this case was only worth one section 667.61 enhancement.

Defendant claims the trial court's reasoning conflicts with *People v. Mancebo* (2002) 27 Cal.4th 735 [117 Cal.Rptr.2d 550, 41 P.3d 556], which he cites for the proposition that a section 667.61 enhancement must be specifically alleged (as stated in § 667.61, subd. (j) ["penalties provided in this section shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact"]), and adequate awareness of the charges is necessary for defense counsel to advise his client effectively during plea bargaining. (*Mancebo, supra*, 27 Cal.4th at pp. 744–745 [where firearm use was pleaded as a basis for § 667.61 enhancement, but multiple victims circumstance was not, trial court erred in substituting multiple victims circumstance as basis for § 667.61 enhancement and using firearm as basis for enhancement under a different statute].) Defendant also cites our statement in *People v. Smart* (2006) 145 Cal.App.4th 1216 [52 Cal.Rptr.3d 456], that it is not too much to ask that a prosecutor clearly specify in the accusatory pleading a defendant's potential punishment under a statutory enhancement. (*Id.* at p. 1225.)

However, the enhancements were *never* alleged in *Mancebo* or *Smart*, neither of which involved an amendment which merely corrected a clerical error in a prior amendment to restore allegations of the original pleading. (*Mancebo, supra*, 27 Cal.4th at p. 740 [multiple victim enhancement was never alleged].)

We conclude defendant fails to show grounds for reversal regarding amendment of the information.

## II. *Misadvisement Regarding Consequences of Going to Trial*

Defendant contends reversal is required because, before he rejected the prosecutor's pretrial plea offer of 30 years to life, the trial court and the

prosecutor misadvised him that his potential maximum sentence if he went to trial was 60 years to life (plus an eight-year enhancement), when in fact it was 120 years to life.[6] We shall conclude the misadvisement does not require reversal because defendant has not shown it is reasonably probable he would have accepted the plea offer had he been advised correctly.

The People do not dispute that the trial court and prosecutor misadvised defendant regarding his potential maximum sentence if he went to trial.

Relying on *People v. Goodwillie* (2007) 147 Cal.App.4th 695 [54 Cal.Rptr.3d 601] (*Goodwillie*), defendant contends the misadvisement constituted federal due process error compelling reversal because the People fail to show absence of prejudice beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].[7] The People respond the initial burden is on defendant to show he relied on the misinformation in rejecting the plea offer.

We reject defendant's reliance on *Goodwillie*.

*Goodwillie* found a Fourteenth Amendment due process violation where an in propria persona defendant expressed on the record a willingness to plead guilty if he would receive full credit for good behavior. The defendant rejected the prosecution's plea offer because the trial court and the prosecution misadvised him that he could not receive full credit. (*Goodwillie, supra*, 147 Cal.App.4th at pp. 731–732.) After the defendant was convicted by a jury, the trial court realized the defendant was in fact eligible for full credit. (*Id.* at p. 732.) The appellate court vacated the judgment and remanded with directions to allow the district attorney to submit the previous offer to the court or set the case for retrial (with or without a resumption of plea negotiations). (*Id.* at p. 738.)

*Goodwillie* said, "In cases involving plea bargains that the defendant has *accepted*, reversal is generally required only if the court fails to inform the defendant of information that makes the plea bargain less attractive than it appeared to be without the omitted information. [Citations.] Extending that concept to the reverse situation where, as here, a defendant rejects the plea bargain and is subsequently convicted, reversal may be required if the omitted information makes the bargain more favorable to the defendant than

---

[6] The People say the potential maximum sentence was 135 years to life, apparently referring to the original information containing nine counts. However, the first amended information, filed a few days before defendant stated on the record his rejection of the plea offer, contained only eight counts.

[7] Defendant specifies he makes no claim of ineffective assistance of counsel in this appeal because it would require a petition for writ of habeas corpus.

it appeared to be without the information." (*Goodwillie, supra*, 147 Cal.App.4th at p. 734, italics added & omitted.)

*Goodwillie, supra*, 147 Cal.App.4th at page 734, observed that *In re Alvernaz* (1992) 2 Cal.4th 924 [8 Cal.Rptr.2d 713, 830 P.2d 747] had held a criminal defendant is deprived of effective assistance of counsel if he or she rejects a plea bargain *because of* misadvice from defense counsel. *Goodwillie* observed the misinformation at issue was given by the court and prosecutor, not by defense counsel (since the defendant represented himself), but "[b]y misinforming [the defendant] as to the consequences of the proffered plea bargain, the court and the prosecutor caused him to reject an offer that was more favorable to him than the result after trial, and one that he had indicated a willingness to accept." (*Goodwillie*, at p. 735.) *Goodwillie* distinguished the case before it, which involved affirmative misinformation by the court, from cases where the court simply failed to inform a defendant of a collateral consequence of a plea. (*Id.* at p. 735, fn. 27.)

*Goodwillie* said, "[T]he court and the prosecutor, as officers of the court, have a duty not to misstate the law, whether intentionally or not. [Fn. omitted.]" (*Goodwillie, supra*, 147 Cal.App.4th at pp. 734–735.) "The trial court and the prosecutor's misunderstanding brought the plea bargaining process to a halt, and thus prevented Goodwillie from obtaining a plea offer more favorable to him than the sentence he received after trial. This violates notions of fundamental fairness assured by the due process clause of the Fourteenth Amendment. [Citation.]" (*Id.* at p. 735.)

*Goodwillie* continued, "Because we have concluded that the trial court's error violated Goodwillie's right to due process, the standard for assessing the prejudice to Goodwillie is that stated in *Chapman v. California*[*, supra*,] 386 U.S. 18, 24 . . . . (See, e.g., *People v. Scheller* (2006) 136 Cal.App.4th 1143, 1152 [39 Cal.Rptr.3d 447] [error implicating due process requires 'federal "beyond a reasonable doubt" standard' of *Chapman*].) *Chapman* provides that federal constitutional error requires reversal unless the People can prove that the error was harmless beyond a reasonable doubt. [Citation.] The People have not made such a showing. In fact, the evidence establishes that Goodwillie was prejudiced," because of the evidence he would have accepted the plea offer. (*Goodwillie, supra*, 147 Cal.App.4th at p. 736.)

As defendant interprets *Goodwillie*, all defendant has to do is show he was misadvised, which automatically constitutes a due process violation requiring reversal unless the People prove the error harmless beyond a reasonable doubt. However, the defendant's evidence in *Goodwillie* showed not only that

the defendant was misadvised, but also that the misadvisement caused him to reject the plea offer.

We shall assume for the sake of argument *Goodwillie* is correct in finding a due process violation from a misadvisement as to penal consequences.

■ We respectfully disagree with *Goodwillie, supra*, 147 Cal.App.4th 695, however, to the extent it holds the burden is *on the People* to prove the error harmless beyond a reasonable doubt. (*Id.* at p. 736.) The burden of showing that a defendant would have accepted the plea bargain, had he been correctly advised of penal consequences, is properly placed on the defendant, for the following reasons:

First, "[a]nyone who seeks on appeal to predicate a reversal of conviction on error must show that it was prejudicial. (Cal. Const., art. VI, § 13.)" (*People v. Archerd* (1970) 3 Cal.3d 615, 643 [91 Cal.Rptr. 397, 477 P.2d 421] [defendant bore burden of showing prejudice from preindictment delay in prosecution, so as to require reversal on due process grounds].) Defendant fails to show this is the type of case where prejudice is presumed. Generally, "[a] person seeking to overturn a conviction on due process grounds bears a heavy burden to show the procedures used at trial were not simply violations of some rule, but are fundamentally unfair. [Citation.]" (*People v. Esayian* (2003) 112 Cal.App.4th 1031, 1042 [5 Cal.Rptr.3d 542] [issue was forfeited and no evidence demonstrated that admission of blood test results, taken in violation of statute, violated due process], citing *Montana v. Egelhoff* (1996) 518 U.S. 37, 43–44 [135 L.Ed.2d 361, 116 S.Ct. 2013] [statute prohibiting voluntary intoxication from being taken into consideration in determining existence of criminal mental state did not violate due process].) It has been consistently held that where a defendant seeks to withdraw a guilty plea due to misadvisement by the court regarding consequences of the plea, the "defendant (even on direct appeal) is entitled to relief based upon a trial court's misadvisement only if the defendant establishes that he or she was prejudiced by the misadvisement, i.e., that the defendant would not have entered the plea of guilty had the trial court given a proper advisement." (*In re Moser* (1993) 6 Cal.4th 342, 347, 352–353 [24 Cal.Rptr.2d 723, 862 P.2d 723] [remanded to allow defendant to present evidence that he was prejudiced by trial court's misadvisement regarding parole term, where prosecution failed to challenge absence of evidence before trial court allowed defendant to withdraw guilty plea]; accord, *People v. McClellan* (1993) 6 Cal.4th 367, 374–378 [24 Cal.Rptr.2d 739, 862 P.2d 739] [trial court's failure to advise about sex offender registration was harmless error because defendant did not object at sentencing and failed to meet his burden to show prejudice].) *People v. Zaidi* (2007) 147 Cal.App.4th 1470 [55 Cal.Rptr.3d 566], allowed a defendant to withdraw a guilty plea due to misadvisement by the court regarding the

lifetime nature of sex offender registration, because the defendant showed prejudice in his prompt effort to withdraw his plea, accompanied by his specific declaration that he would not have entered a plea had he known of the lifetime registration requirement. (*Id.* at p. 1490.) We see no reason to apply a different rule where misadvisement allegedly causes a defendant to reject a plea bargain in the first place.

Second, it makes sense to require the defendant to show prejudice, because the defendant is the only one who knows whether he would have accepted the plea bargain absent the misadvisement. *Goodwillie* thus assigns the People an impossible burden insofar as it requires the People to show absence of prejudice.

Third, when a defendant claims misadvisement *by defense counsel* and seeks reversal due to ineffective assistance of counsel, the defendant has the burden to show he or she would have made a different decision had defense counsel advised properly. (*In re Alvernaz, supra*, 2 Cal.4th 924, 936–937 [to establish a claim of ineffective assistance of counsel in the context of a defendant's rejection of a proffered plea bargain, the defendant must show not only deficient performance by counsel, but also prejudice, i.e., a reasonable probability that defendant would have accepted the plea offer but for counsel's deficient performance, and that the trial court would have approved the plea bargain]; see also cases seeking to withdraw guilty pleas, e.g., *Hill v. Lockhart* (1985) 474 U.S. 52, 58–59 [88 L.Ed.2d 203, 209–210, 106 S.Ct. 366] [defendant who pleaded guilty was required to show that, but for counsel's deficient performance, he would have rejected the plea offer and insisted on going to trial]; *In re Resendiz* (2001) 25 Cal.4th 230, 239, 253–254 [105 Cal.Rptr.2d 431, 19 P.3d 1171] [defendant failed to show he would have rejected plea bargain had trial counsel not misadvised him].) It would be anomalous to place the burden on the defendant in ineffective-counsel cases but on the People in other cases of misadvisement.

Finally, in this case, unlike *Goodwillie*, nothing in the record on appeal suggests defendant would have accepted the 30-year proffered deal if he had been correctly advised of penal consequences. (*In re Resendiz, supra*, 25 Cal.4th at p. 253 [in determining whether defendant would have accepted or rejected plea offer, pertinent factors include disparity between proposed plea bargain and probable consequences of going to trial (as viewed at the time of the offer), and whether the defendant indicated he or she was amenable to negotiating plea bargain].)

At sentencing, the defense made no objection and showed no surprise at the 90-year sentence, nor did the defense claim the earlier misadvisement caused defendant to reject the plea offer.

Defendant asks us to draw from the record an inference that he would have accepted the plea bargain. He argues 68 years is "a world away" from 120 years, and the former would leave him a reasonable hope of release at age 82 (with nine years credit), whereas the latter would be in effect a life sentence without any real possibility of parole. We question defendant's math, because he was 31 years old at the time, and therefore would be age 99 at the end of 68 years, and age 90 if we deduct nine years' credit. In any event, even if we accept defendant's calculation, it could just as well be that a person of defendant's age (31) would not consider the possibility of parole at age 82 as a ray of hope. Such a person might consider 68 years as a life sentence, such that 120 years would have made no difference.

Defendant refers to the jury's verdict acquitting him of one count and finding him guilty of a lesser offense on another count, which lowered the sentence. However, the issue here was the potential maximum sentence at the time defendant rejected the pretrial plea offer (*In re Resendiz, supra*, 25 Cal.4th at p. 253), not the actual sentence he ended up with after trial. We recognize a defendant's plea decision may be based in part on the defendant's belief that his culpability is less than the prosecution thinks. Nevertheless, the ultimate verdict does not serve as evidence that defendant would have accepted the plea offer but for the misadvisement.

Defendant says the record suggests he might have been amenable to a plea bargain with a prison sentence, because he knew he was guilty of something, as reflected in his admissions to the sheriff's investigator and defense counsel's admission of two counts of molestation in closing argument to the jury (though defense counsel argued they were committed without force). However, these circumstances are insufficient to show defendant would have accepted the plea offer had he been properly advised about the potential sentence.

Thus, even assuming the trial court would have accepted the plea bargain, we conclude defendant fails to show the misadvisement prejudiced him so as to entitle him to reversal of the judgment. (*In re Alvernaz, supra*, 2 Cal.4th at p. 945.)

III.–V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 448.

## DISPOSITION

The trial court shall prepare an amended abstract of judgment striking the $600 fine imposed under Penal Code section 243.4 and shall transmit a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

Davis, J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 14, 2009, S168154. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.