Filed 8/27/21  P. v. Jackson CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TRAVON LATRELL JACKSON,<br><br>        Defendant and Appellant. | A161068<br><br>(Contra Costa County Super. Ct. No. 52003606) |

A jury convicted Travon Latrell Jackson of two counts relating to driving a stolen vehicle.  Because he had previously been convicted of residential burglary, the jury's verdict subjected Jackson to a doubled sentence under the three strikes law set forth in Penal Code[1] section 1170.12, subdivision (c)(1).  The trial court denied Jackson's request to strike his prior conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and it sentenced him to six years in prison.  The trial court also imposed a $600 restitution fine and $70 in assessments.  Jackson appeals, contending the trial court abused its discretion when it declined to strike his prior conviction and violated his

_____

[1] Undesignated statutory citations are to the Penal Code.

1

due process rights under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) by imposing a fine and assessments he could not pay.  We disagree and affirm.

## BACKGROUND

In January 2020, the police found Jackson at a gas station in a car that had been stolen two days earlier.  A search of the car and Jackson's person revealed other property that had been stolen at the same time and from the same victim as the car, including more than $30,000 in cash and two computers.  There were also burglary tools in the car.

A jury convicted Jackson of driving or taking a vehicle without consent (Veh. Code, § 10851, subd. (a)) and receiving a stolen vehicle.[2]  (§ 496d.)  The jury found the vehicle's value to be more than $950.  The court found true the allegation that Jackson had been convicted of residential burglary in 2018.

Prior to sentencing, Jackson moved to convert his convictions to misdemeanors under section 17, subdivision (b).  He also invited the trial court to exercise its authority under section 1385 and *Romero* to strike the finding of his prior conviction, to avoid having his sentence doubled under section 1170.12, subdivision (c)(1).  Together with his motions, Jackson submitted a psychologist's report.  This report stated that Jackson had been raised by a foster mother who physically and emotionally abused him.  The biological son of Jackson's foster

---

[2] The jury acquitted Jackson of the other count in the information, which charged him with residential burglary based on the initial theft of the vehicle and other possessions from the victim's home.

2

mother also abused Jackson sexually when Jackson was five or six years old. He began using marijuana daily when he was 14, and such heavy use at a young age is associated with problems in attention, learning and memory, and executive functioning. Jackson dropped out of high school in the 12th grade before receiving a diploma. Jackson told the psychologist he had never held a steady job. The psychologist diagnosed him with post-traumatic stress disorder and a developmental language disorder relating to expressive language. The psychologist believed Jackson's poor executive functioning and communication limitations had played a significant role in his inability to secure employment and housing. The psychologist recommended Jackson receive supportive housing, job training, and drug counseling and noted that Jackson would likely need extensive support in learning how to apply for jobs, assistance with job placement, and supervision once placed. The psychologist also reported that Jackson said he was in good physical health.

At the sentencing hearing, Jackson's counsel noted that Jackson had issues with drugs, did not finish high school, and had no history of steady employment. The trial court pointed out that after Jackson was placed on probation from his prior burglary conviction, he had failed to report and committed a trespassing violation. Then, after returning to jail and being released again on probation, Jackson had failed to report, was arrested by BART police for obstructing or resisting a peace officer, and committed the offenses for which he was convicted.

Jackson's counsel did not dispute this history but noted that the psychologist had found Jackson suffered from some delays and needed more assistance with complying. His counsel asserted that he had been transient, using drugs, and did not know how to report to probation. Counsel observed that Jackson had made positive changes during her representation of him after the drugs "wore off," and she claimed he was ready to change his life. Jackson's sister had offered to allow him to live with her and help him with reporting to probation, getting his high school diploma, and obtaining mental health and drug counseling.

The trial court denied the section 17, subdivision (b) motion and declined to strike the prior conviction, based on the circumstances of the offense and Jackson's history. It noted Jackson had been terminated unsuccessfully from probation in juvenile court, his criminal behavior had continued unabated as an adult, his performance on supervision had been "nothing short of abysmal," and it was impossible to assist someone who does not show up for assistance. The court sentenced Jackson to the mid-term of three years for the count of driving or taking a vehicle without consent, doubled to six years under section 1170.12, subdivision (c)(1). The trial court also imposed a mid-term sentence of three years, doubled to six years under section 1170.12, subdivision (c)(1), for the count of receiving a stolen vehicle; it stayed that count pursuant to section 654.

Jackson's counsel asked the trial court not to impose any fines and fees because Jackson could not pay them. His counsel noted he had been transient, had never been employed, and had

4

some disabilities documented in the psychologist's report. The court said it would make a finding that he could not pay the fines that were discretionary but it had to impose a restitution fine under section 1202.4. It found $600 was appropriate because it represented $100 per year of his sentence. It also imposed a conviction assessment fee of $30 and a court security fee of $40.

## DISCUSSION

### I. *Romero* motion

" '[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, [the California Supreme Court has] established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to Penal Code section

5

1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) "[A] trial court's failure to dismiss or strike a prior serious and/or violent felony conviction allegation under section 1385 should be reviewed for abuse of discretion." (*Id.* at p. 376.)

Jackson contends his background and the circumstances of his offense made it an abuse of discretion for the trial court to decline to strike his prior conviction. He concedes that his prior conviction was not remote in time, since it occurred only two years before the current offense. But Jackson notes that he was only 24 years old at the time of sentencing, and none of his offenses have been violent. He explains his poor performance on probation by emphasizing the serious abuse he suffered as a child, his resulting post-traumatic stress disorder, his failure to complete high school, and his lack of employment. Jackson also points out he was transient at the time of the instant offense and has had issues with drugs, which made it difficult for him to comply with probation. Jackson argues that he has positive future prospects because his sister has offered him a place to live and promised to help him obtain mental health counseling, drug

6

counseling, and a high school diploma. Finally, he asserts he would still serve a substantial sentence of three years if his prior conviction were struck.

We are sympathetic to Jackson's difficult upbringing and his sister's willingness to help him turn his life around. These facts, as well as the others Jackson highlights, might have reasonably persuaded another trial judge to strike his prior conviction. But on appeal, given the abuse of discretion standard of review, they are insufficient to warrant reversal. "[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) " '[I]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where . . . 'the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

7

Jackson's personal history, nonviolent offenses, and promises of family help are not so extraordinary that every reasonable person would agree that they outweigh Jackson's choice to commit new offenses three months into the probation period for his prior offense, especially after Jackson had already had probation revoked several times earlier. Jackson's drug issues and lack of stable housing may have made it more difficult for him to comply with probation, but Jackson does not explain why he was unable to reach out to his sister earlier, or what about his situation has changed since his prior offenses. The trial court could reasonably conclude that the three years Jackson would serve if his prior conviction were struck would be insufficiently long to put an end to Jackson's repeated offenses.

Jackson notes that the trial court found his criminal behavior had continued "unabated" and cites our Supreme Court's statements that a defendant's recidivist status is relevant but not " 'singularly dispositive' " and that the three strikes law's purpose of ensuring longer sentences does not "predominate" a trial court's exercise of its discretion to strike prior convictions. (*People v. Garcia* (1999) 20 Cal.4th 490, 501.) The trial court did not treat as dispositive Jackson's status as a recidivist or the need to increase his sentence. The record shows the trial court considered Jackson's personal history, criminal history, the nature of his offenses, the timing of his offenses, and efforts while on probation when determining what sentence was appropriate. It did not abuse its discretion in the balance it struck between these various concerns.

8

**II.    *Dueñas* and fines**

Jackson argues the trial court correctly found he was unable to pay certain fines and fees but violated his right to due process under the rationale of *Dueñas* by not concluding he was also unable to pay a $600 restitution fine and $70 in court operations and facilities assessments.

"In a nutshell, *Dueñas, supra*, 30 Cal.App.5th at pages 1168–1169, held that a sentencing court violated the due process rights of a defendant who committed her acts out of poverty when it imposed certain mandatory fees and fines that lack a statutory exception without first making a finding the unemployed defendant (who suffered from cerebral palsy) had the ability to pay while she was on probation." (*People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100.)  Several decisions have disagreed with *Dueñas*, and the California Supreme Court is currently considering the issue.  (E.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946; *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)  In the absence of any guidance from our Supreme Court, we adhere to the view expressed in this Division's decision in *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, S261952 (*Cowan*) that constitutional challenges to fines or fees based on a claim that a defendant cannot pay them should be evaluated under the Eighth Amendment and article I, section 17 of the California Constitution.  (*Cowan*, at p. 42; see *Estate of Sapp* (2019) 36 Cal.App.5th 86, 109, fn. 9 ["Absent a compelling reason, the

9

Courts of Appeal are normally loath to overrule prior decisions from another panel of the same undivided district or from the same division"].)  Four factors are relevant to that type of evaluation:  " '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.' "  (*Cowan*, at p. 47.)

*Cowan* was decided long before Jackson filed his briefing in this case, but he has not mentioned the four relevant factors. Instead, he disputes, based on *People v. Belloso* (2019) 42 Cal.App.5th 647, 649–650, review granted Mar. 11, 2020, S259755, that analysis of the fines and assessments should proceed under the Eighth Amendment and focuses solely on his inability to pay.  But as *Cowan* pointed out, *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728 treated ability to pay as one of several factors relevant to determining whether a fine is excessive, not an independently sufficient reason to bar a fine.  (*Cowan*, *supra*, 47 Cal.App.5th at p. 48, fn. 20.)  We stand by *Cowan* and decline to analyze Jackson's fine and assessments solely based on his inability to pay.

Because of Jackson's failure to address all four relevant factors, he has not established that the fine and assessments imposed by the trial court are excessive under the Eighth Amendment or article I, section 17 of the California Constitution. (See *People v. Miralrio* (2008) 167 Cal.App.4th 448, 452, fn. 4 [an appellate court is not required to address undeveloped claims or ones inadequately briefed]; *In re S.C.* (2006) 138 Cal.App.4th 396,

10

408 [a judgment is presumed correct on appeal, and to demonstrate error, appellant must present meaningful legal analysis supported by citations to authority]; see also *Cowan*, *supra*, 47 Cal.App.5th at p. 49 [defendant bears the burden of proving inability to pay].)

Moreover, even if Jackson's ability to pay were the sole relevant consideration, we would affirm the trial court's judgment. The trial court waived some discretionary fines and fees and stated that it was required to impose a restitution fine. This might suggest that the trial court imposed the remaining fines without regard to Jackson's ability to pay. However, the trial court imposed a $600 restitution fine even though the Penal Code gave it discretion to impose as little as $300 if it believed Jackson was unable to pay a larger amount, and it explained why it believed a $600 fine to be appropriate. (§ 1202.4, subds. (b)(1), (c)–(d).) We therefore interpret the trial court's imposition of the greater amount as reflecting an implicit finding that Jackson was able to pay $670 in fines and assessments.

Despite Jackson's asserted lack of assets, we perceive no error in this finding, because "the evaluation of ability to pay must include future ability to pay" and take into account wages that a defendant may earn in prison. (*Cowan*, *supra*, 47 Cal.App.5th at p. 49; *People v. Kopp*, *supra*, 38 Cal.App.5th at p. 96.) Jackson admitted to the psychologist that he was in good physical health, and Jackson will serve a six-year prison term during which he will likely be eligible to earn prison wages. Maximum monthly wages for prison inmates range from $12 to

11

$56, and the California Department of Corrections and Rehabilitation will deduct up to half of those wages to pay any outstanding restitution fines. (§ 2085.5, subd. (a); Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).) Even if Jackson earns the minimum, he can pay off much of his fine and assessments by the end of his prison term. If he follows through on his stated intentions to obtain his high school diploma and learn how to get a job, he should be able to pay off the rest of his fine and assessments after his release. In these circumstances, the fine and assessments the trial court imposed are not unconstitutionally excessive.

### III. Abstract of judgment

The Attorney General argues that the trial court improperly failed to impose a six-year sentence for the charge of receiving a stolen vehicle before staying that sentence under section 654. We disagree with the Attorney General's reading of the record. We conclude from the trial court's statements at sentencing that it first imposed the sentence and then stayed it. But we do agree, as does Jackson, that the abstract of judgment and minute order fail to reflect the numerical term of six years that the trial court imposed and stayed. Those records must be corrected. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188 [appellate courts can and should correct errors in abstracts of judgment].)

## DISPOSITION

The judgment is affirmed. The trial court clerk shall prepare an amended minute order and abstract of judgment to

reflect imposition of a six-year term on count three, stayed pursuant to section 654. The trial court clerk shall transmit a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


BROWN, J.


WE CONCUR:

POLLAK, P. J.
TUCHER, J.


*People v. Jackson*  (A161068)