Filed 1/21/26  P. v. Champagne CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>MICHAEL DAVID CHAMPAGNE,<br><br>　　Defendant and Appellant. | D084663<br><br><br>(Super. Ct. No. FMB23000430) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Sarah Oliver, Judge.  Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Michael David Champagne appeals from his conviction on five felony offenses, contending (1) the trial court violated his Fourteenth Amendment right to due process by misinforming him of the minimum probation term

available, (2) trial counsel provided ineffective assistance of counsel by failing to inform the trial court of the correct minimum probation term, and (3) the cumulative impact of the errors rendered the proceeding fundamentally unfair. The People concede the trial court erred when advising on the minimum probation term. Even so, we conclude it did not rise to the level of a federal constitutional error, and we perceive no prejudice from the misadvisement. Champagne's ineffective assistance of counsel claim relies on—and thus fails for—the same prejudice argument. And we conclude the cumulative effect of these claimed errors does not require reversal. We therefore affirm.

I.

In November 2023, Champagne subjected his wife to hours of physical and mental abuse in their shared residence. Based on these events, the People charged Champagne with assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count 1); assault by means of force likely to produce great bodily injury (§ 245(a)(4); count 2); criminal threats (§ 422(a); count 3); injuring a spouse (§ 273.5(a); count 4); and false imprisonment by violence (§ 236; count 5).

At a pretrial hearing, the court noted the parties had not come to an agreement on a plea bargain, despite "some attempts," and they were set to go to trial the next day. The court informed Champagne the maximum prison time for the charged offenses was seven years and four months in state prison. The court also acknowledged the People's "current [plea bargain] offer . . . is [four] years of probation with 180 days in the county jail." With custody credits and the work-release program, the court informed Champagne that, under this offer, he would "be released today" and needed to serve about 16 more days "on the weekend work-release program."

2

Champagne asked about probation details before asking if the plea bargain offer could remain open "for one more day" so he could "get a second opinion . . . before we proceed to trial." The court offered to delay the jury's arrival time to allow Champagne more time to consider the offer, and the People agreed to keep the offer open until 1:30 p.m. the next day. The court assured Champagne he would "have time to think about [the offer]" and to "[t]alk to whoever [he] need[ed] to."

Next, Champagne asked to clarify the court's reference to a plea bargain offer of four years of probation because "[his] understanding was [three years]." In response, the court explained it "would have to impose [four] years [of] probation" because the charges involved domestic violence. But the court also said, "I'll let [your counsel] follow up with that." Defense counsel immediately "confer[red] with" Champagne, though that conversation was not reported. The court then asked defense counsel, "Anything else?" Defense counsel responded, "No, your Honor."

The trial convened the next day with no further mention of the plea bargain offer.

A jury found Champagne guilty on all charges. The court sentenced Champagne to three years in prison followed by a period of parole.

## II.

## A.

Champagne argues the trial court violated his Fourteenth Amendment right to due process when it misinformed him of the minimum probation term. We accept the People's concession that the court erred but conclude it did not amount to a federal constitutional error, and we discern no prejudice.

1.

A court has a "duty not to misstate the law, whether intentionally or not." (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 734-735.) As the People concede, here the trial court erred when it told Champagne it would have to impose four years of probation because the minimum probation term for a domestic violence crime is three years, not four. (§ 1203.097(a)(1).)

We disagree, however, that the error violated Champagne's federal due process rights. Champagne relies solely on *Goodwillie* to establish a due process violation, yet *Goodwillie* is distinguishable. In *Goodwillie*, the trial court and prosecutor misinformed the self-represented defendant of his eligibility for good conduct credits against his sentence. (*Goodwillie*, 147 Cal.App.4th at p. 701.) The defendant said he would accept the discussed plea bargain "'right now'" if he was given 50 percent credit against his sentence. (*Id.* at p. 731.) The court and the prosecutor, however, told the defendant—mistakenly and incorrectly—that he was ineligible for 50 percent credit. (*Id.* at pp. 731, 733.) Critically, the defendant "attempted to negotiate a different deal, but the court stopped him." (*Id.* at p. 732.) The court directed the prosecutor to instead present the "last best offer," which included only 15 percent credit. (*Ibid.*) The defendant expressly rejected that offer. (*Ibid.*) On appeal, our division concluded the defendant's federal due process right was violated because the "trial court's and the prosecutor's misunderstanding brought the plea bargaining process to a halt" and "caused [the defendant] to reject an offer . . . that he had indicated a willingness to accept." (*Id.* at p. 735.)

Here, unlike in *Goodwillie*, the court never prohibited Champagne from further negotiating a plea bargain. Rather than halting negotiations, the court expressly let Champagne's counsel "follow up" on the minimum

4

probation term and the prosecutor kept the offer open long enough for Champagne to get a second opinion. And Champagne never indicated he was willing to accept a plea bargain offer of three years of probation as opposed to four years. As a result, the error here does not amount to a federal due process violation, so it does not require applying the heightened standard for assessing prejudice used in *Goodwillie*. (See *Goodwillie*, 147 Cal.App.4th at p. 736.)

2.

We discern no prejudice from the court's misadvisement about the minimum probation term of the plea bargain offer.

An error that does not implicate a federal constitutional right is harmless unless it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) The defendant bears the burden to establish prejudice under the *Watson* standard. (*People v. Alexander* (2010) 49 Cal.4th 846, 910.)

Champagne has not satisfied that burden here. In *People v. Miralrio* (2008) 167 Cal.App.4th 448, the appellate court found no prejudice from the misadvisement under the *Watson* standard because "nothing in the record on appeal suggests defendant would have accepted the . . . proffered deal if he had been correctly advised."[1] (*Miralrio*, at p. 463.) Champagne argues that, unlike *Miralrio*, he "likely" would have accepted an offer of three years of probation because (1) trial counsel "presumably" advised him

---

[1] Despite assuming a due process violation, *Miralrio* disagreed with *Goodwillie* and applied the *Watson* standard for prejudice. (*Miralrio*, 167 Cal.App.4th at p. 462.) Though we apply the *Watson* standard for a different reason, discussed above, *Miralrio* serves as an example of assessing *Watson* prejudice in the context of plea bargain misadvisement.

he had a weak defense and was presumptively ineligible for probation outside the plea bargain process; and (2) the record indicates he "showed his interest in a plea bargain" when he asked the court about the conditions of the proposed work-release program, asked for time to get a second opinion, and mentioned he understood the offer to be for three years of probation. Even were we to accept Champagne's presumption about trial counsel's advisements, such knowledge had not been enough for Champagne to accept the earlier "attempts" to reach a plea bargain on the eve of trial. Instead, his decision to move forward with trial despite these factors makes it less probable he would have chosen differently without the benefit of hindsight from knowing his posttrial verdict and sentence. As to his purported interest in a plea bargain, Champagne asks us to infer from it that he "would have likely accepted an offer of three years of probation." But that inference is speculative, as it is equally likely Champagne took his chance at trial given he requested time for a second opinion "before we proceed to trial." Accordingly, Champagne has not established it is reasonably probable he would have chosen differently had the trial court not misstated the minimum probation period.

Thus, Champagne has failed to carry his burden to establish prejudice.

B.

Champagne also argues trial counsel provided ineffective assistance of counsel by failing to inform the court the minimum probation term was three years, not four. We disagree.

To establish ineffective assistance, an appellant must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The prejudice prong requires the appellant to show a "reasonable

6

probability"—one that "undermine[s] confidence in the outcome"—"that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Id.* at p. 694.) An appellant's claim that "with competent advice [the appellant] *would* have accepted a proffered plea bargain" must be "corroborated independently by objective evidence"; a later "self-serving" statement by the appellant is "insufficient in and of itself to establish prejudice." (*In re Alvernaz* (1992) 2 Cal.4th 924, 938, 945.)

Here, Champagne's arguments for prejudice from his counsel's failure to correct the trial court about the minimum probation term are the same as those offered to prove the prejudice from the trial court's error. They thus fail for the same reasons discussed above.

By not satisfying the prejudice prong, Champagne falls short of establishing a violation of his right to effective assistance of counsel.

C.

Finally, Champagne challenges the cumulative effect of these asserted errors by arguing they created a fundamentally unfair trial setting. But "we have found each error or possible error to be harmless when considered separately." (*People v. Bolden* (2002) 29 Cal.4th 515, 567-568.) "Considering them together, we likewise conclude that their cumulative effect does not warrant reversal of the judgment." (*Id.* at p. 568.)

III.

We affirm.

CASTILLO, J.

WE CONCUR:

DO, Acting P. J.

RUBIN, J.

7