Filed 5/31/13  P. v. Buenrostro CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>VICENTE BUENROSTRO,<br><br>      Defendant and Appellant. | A132888<br><br>(Alameda County<br>Super. Ct. No. H49788) |
| In re VICENTE BUENROSTRO<br><br>      on Habeas Corpus. | A135618 |

During the time his wife was babysitting two young girls, defendant Vicente Buenrostro sexually molested them.  After unsuccessful plea bargain negotiations, defendant went to jury trial on two counts of continuous sexual abuse (Pen. Code, § 288.5, subd. (a)),[1] with special allegations that the offenses involved multiple victims (§§ 667.6, subd. (d), 667.61, subds. (c) & (e)(4)); one count of oral copulation of a person under 14 (§ 288a, subd. (c)(1)); and one count of sexual penetration by a foreign object of a person under 14 (§ 289, subd. (j)).  The jury convicted him on all counts and found the special allegations to be true.  The trial court sentenced him to 18 years in state prison.

As we shall explain further below, defendant went to trial after turning down a plea offer which was made in the context of a belief shared by defense counsel, the prosecutor, and the trial court that defendant faced much higher potential minimum and

_____

[1] Subsequent statutory citations are to the Penal Code.

maximum sentences than he actually did. The question before us involves what might have happened had defendant been correctly informed of the potential minimum and maximum sentences when deciding whether to plead guilty or go to trial.

On direct appeal and in an accompanying petition for writ of habeas corpus, defendant contends the erroneous advice by defense counsel regarding the minimum and maximum sentences denied him the right to the effective assistance of counsel, and the prosecutor's and trial court's misinformation regarding the minimum and maximum sentences deprived him of due process. We reject defendant's contentions on the ground he cannot show prejudice. Accordingly, we affirm the judgment of conviction and deny the habeas corpus petition.

## I. FACTS & PROCEDURAL BACKGROUND

### A. *The Facts of the Offenses*

Under applicable standards of appellate review, we must view the facts in the light most favorable to the judgment of conviction, and presume in support of the judgment the existence of every fact which the jury could reasonably find from the evidence. (*People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Neufer* (1994) 30 Cal.App.4th 244, 247.)

The victims are sisters, A. Doe and S. Doe. They both received afterschool care from a neighbor, defendant's wife Simona Buenrostro: A. Doe from first to sixth grades, S. Doe from the age of one through the fourth grade. The sisters revealed defendant's repeated sexual abuse to family members in the spring of 2010, when S. Doe was in the seventh grade.

In the backyard of defendant and Simona's house, there was a garden and a shed. A. Doe, 18 years old at the time of trial, testified defendant asked her to help him with something in the shed when she was about six years old. When they entered the shed defendant put her on the table, took his penis out of his pants, and started touching the inside of her legs over her clothes. He grabbed her hand and held it on his erect penis while he rubbed it. Then he told her she should not tell anyone.

Over the next three years, until A. Doe was nine, defendant took her into the shed five or six times, pulled down her pants and underwear, took out his penis, and rubbed it

2

on her inner thighs. He took her hand and forced her to touch his penis. He also rubbed her on her vaginal area with one hand, while holding his other hand over hers on his penis. Each time he told her not to tell anyone. At one point, he made her touch his penis in Simona's bedroom.

A. Doe also testified defendant inappropriately touched her and S. Doe in the shed at the same time, on at least 10 occasions. Defendant touched them both in the manner just described above, making A. Doe watch while he touched S. Doe. A. Doe thought the last such incident was when A. Doe was in the fifth or sixth grade.

S. Doe, 13 years old at the time of trial, testified defendant asked her to help him with something in the shed when she was in kindergarten. Once inside, he closed the door and put S. Doe on the table. He pulled down her pants and underwear and started touching her vaginal area with one hand, with the other hand in his pants. After defendant pulled up her pants, S. Doe said she would tell Simona what had happened. Defendant told her not to because then Simona would not like S. Doe anymore and "would be mad and sad." S. Doe testified about another such touching incident, and said defendant took her into the shed more than five times while she was still in kindergarten. From the time S. Doe was in kindergarten through the second grade, defendant took both sisters into the shed together and touched each one in a manner similar to the one described above. According to S. Doe, this happened six or seven times.

S. Doe further testified that when she was in the first grade, defendant took her into the shed by herself and touched her vagina "way more than" 12 times. On more than five such occasions, defendant would pull down his pants and touch his exposed penis. On one such occasion, he grabbed her hand and rubbed it back and forth on his penis.

Defendant continued to touch S. Doe in the shed until she was in the fourth grade. The last time he touched her was also when she was in the fourth grade, but the incident occurred in the garage. He pulled down her pants and underwear and touched her vagina. He put his finger inside her vagina and kept it there for three minutes, touching his exposed penis with his other hand, ignoring S. Doe's pleas for him to stop because it hurt. Then he grabbed her hand and made her rub his penis. He grabbed her by the hair and

3

forced her face toward his penis, telling her to open her mouth; she refused, and he grabbed her cheeks and forced his penis into her mouth for a short time.

The People presented the testimony of the younger sister of the victims, M. Doe, who testified defendant twice exposed himself to her before she started kindergarten, but no touching was involved. The People also played a videotape of an interview of defendant by police detectives, in which defendant denied wrongdoing.

Defendant did not testify. His 13-year-old granddaughter testified on his behalf that he had never touched her in a sexual way. Simona testified A. Doe never told her something was bothering her, and S. Doe never told her defendant was touching her inappropriately or "showing her things he shouldn't be showing her."[2] Defendant's two sons testified he behaved appropriately around children, or got along with them. One son testified A. Doe, S. Doe and M. Doe never came to him and said they "felt uncomfortable or didn't like somebody."

### B.  Procedural Background

On November 15, 2010, the People charged defendant by an amended felony complaint alleging four counts, as follows:  continuous sexual abuse of Jane Doe 1 between January 1, 1997 and June 30, 2004 (§ 288.5, subd. (a), count 1); continuous sexual abuse of Jane Doe 2 between January 1, 2002 and December 31, 2005 (§ 288.5, subd. (a), count 2); and two counts of oral copulation or anal penetration with a child under 10, Jane Doe 2, between January 1, 2006 and June 1, 2007 (§ 288.7, subd. (b), counts 3 and 4).

All four counts alleged multiple victim enhancement allegations as set forth in sections 667.6, subdivision (d), and 667.61, subdivisions (c) and (e)(5).  Section 667.6, subdivision (d) mandates a "full, separate, and consecutive term . . . for each violation [of certain offenses enumerated in subdivision (e)] if the crimes involve separate victims . . . ."  Section 667.61, subdivision (b), mandates an indeterminate sentence of 15 years to life for the commission of certain offenses enumerated in subdivision (c) under one of the

---

[2] S. Doe had testified she told Simona about defendant's inappropriate touching on one occasion.

circumstances specified in subdivision (e). Section 667.61, subdivision (e)(5), which was renumbered subdivision (e)(4) shortly before the amended complaint was filed, designates the circumstances of multiple victims.[3]

Prior to the preliminary examination, the People made a plea bargain offer of a determinate term of 24 years. This offer was subsequently referred to on the record on the second day of trial, before the evidentiary phase of the trial began. The preliminary examination began November 15, 2010. At that time, defendant was 68 years old.

In a declaration accompanying the habeas corpus petition, defense counsel, Jamil F. Karwash, stated that "[a]t the time of the preliminary examination," the Deputy District Attorney, Susan Torrence, had "offered a plea bargain that would have resulted in a prison sentence of 24 years."[4] In his own declaration accompanying the habeas corpus petition, defendant stated, "In part because of my age, I was unwilling to accept a sentence of 24 years in prison. Nevertheless, I was willing to consider a negotiated disposition of the case." Defendant authorized Karwash to conduct plea negotiations with the prosecutor and "was willing to consider offers . . . for a prison sentence of less than 24 years."

After the preliminary examination, on November 29, 2010, the People filed an information that substantially tracked the charging scheme in the complaint, with two minor and identical changes.[5]

---

[3] Section 667.61, subdivision (e)(5) was renumbered as subdivision (e)(4) effective September 9, 2010. (Stats. 2010, ch. 219, § 16.)

[4] Typically, a defendant alleging ineffective counsel supports his habeas petition with declarations attesting to facts outside the record on appeal. The reviewing court determines whether petitioner has shown a prima facie case for relief. If he has, the court generally issues an order to show cause for an evidentiary hearing to test the truth of the allegations in the declarations.

For the purposes of this opinion, we accept arguendo the referenced factual statements in the declarations in support of the habeas corpus petition, and express no opinion on the ultimate truth or falsity of their factual allegations.

[5] The information alleged the offenses in counts 3 and 4 occurred between January 1, 2006 and June 30, 2007—not June 1, 2007, as alleged in the amended complaint.

On May 9, 2011, the first day of jury trial, the People filed an amended information. The amended information alleged two counts of continuous sexual abuse of Jane Doe 1, now identified as A. Doe, between January 1, 1997 and June 30, 2004 (count 1), and of Jane Doe 2, now identified as S. Doe, between January 1, 2002 and December 31, 2005 (count 2). Counts 1 and 2 alleged the multiple victim enhancement allegations of sections 667.6, subdivision (d), and 667.61, subdivisions (c) and (e)(5).[6]

The amended information further alleged two sex offenses committed against S. Doe between January 1, 2006 and June 30, 2007, for behavior which occurred in the garage: oral copulation of a person under 14 (§ 288a, subd. (c)(1), count 3); and sexual penetration by a foreign object (defendant's finger) (§ 289, subd. (j), count 4). Counts 3 and 4 did *not* bear any multiple victim enhancement allegations.[7]

On May 9, 2011, Deputy District Attorney Torrence and defense counsel Karwash appeared before the trial court, Honorable Robert K. Kurtz, for preliminary matters including argument of several motions in limine. The matter was adjourned to the next day.

In his declaration, defense counsel Karwash states, that "[a]fter the filing of the Amended Information"—with no date provided—the trial judge "encouraged plea negotiations and Ms. Torrence invited me to make a counteroffer." Karwash declares he conferred with defendant, "who authorized me to make a counteroffer of 10 years imprisonment and stated that such a sentence would be acceptable to him." Karwash communicated the 10-year counteroffer to Torrence, "who told me she would confer with the alleged victims' family and get back to me. Eventually, Ms. Torrence told me that her offer was unchanged: 24 years in prison." As noted, defendant was unwilling to accept an offer of 24 years. He states in his declaration that when defense counsel "informed me . . . that the prosecutor remained unwilling to make a deal for a prison

---

[6] See footnote 3, *ante*.

[7] At the time of the filing of the amended information, defendant was 69 years old. Defendant is 71 years old at the time of this writing.

sentence . . . shorter than 24 years[,] I therefore instructed Mr. Karwash to take the case to trial."

It is not entirely clear, but this negotiation process must have occurred on May 9, 2011, or on the morning of May 10, 2011. On that day, the second day of trial, the parties appeared and discussed several matters, including other motions in limine. At 9:54 a.m., according to the minute order of that day, "Court and counsel review[ed] defendant's exposure and status of settlement negotiations."

The reporter's transcript of that hearing reveals the following discussion:

"THE COURT: [M]r. Buenrostro, what we're going to do is put on the record the exposure as to the offenses that you're charged with. My reason for doing that or requesting that is because there have been occasions where people have gone to trial, they have lost, and there have been indications then that they never would have gone to trial if they understood what the penalties were.

"[¶] And so, to have it on the record that in fact that has been indicated and what the offer was, we're simply memorializing these things. It's not a matter of in any way trying to get you to plead or to in any way give up your right to trial by jury.

"[¶] Ms. Torrence, do you want to run through the exposure on this case?

"MS. TORRENCE: Yes, Your Honor.

"[¶] It's my understanding that due to the multiple victim clause in Penal Code section 667.61, I'm pretty sure it's (e)(5) [sic] in this case, his exposure would be 15 to life for Counts 1 and 2. In addition, in Counts 3 and 4, he would be—if convicted of those counts as well, he would be looking at a potential sentence of between three years and 16 years for those two counts, depending on if the Court did low term, aggravated term, consecutive or concurrent.

"[¶] The judge would be able to give concurrent time under 667.6 paren (c), and that would end up with a determinate sentence of between three and 16 years which would be served first, followed by an indeterminate sentence of 15 to life.

7

"[¶] Essentially what that means is that the eligibility for parole would be approximately 40 years in because the determinate is served first and then the low term after.

"THE COURT: As to the determinate term, that would be subject to the limitation on conduct credits, so he'd have to serve 85 percent of that.

"MS. TORRENCE: Correct.

"THE COURT: My notes reflect that, for the 288.5(a), the triad of penalties is six years, 12 years or 16 years. The 667.61(a) or (b) is a 15-to-life. The 667.6 provides for full-term stacking. Those charges and penalties are the same as to Count 2[,] 3 and 4 carry three, six and eight.

"[¶] Mr. Karwash, do you have any disagreement with the indicated potential sentences?

"MR. KARWASH: No, Your Honor."

It was at this point that the plea bargain offer of a determinate term of 24 years, made before the preliminary examination, was referred to on the record as mentioned above:

"THE COURT: And the offer that was extended in this case was 24 years as a determinate term which he would have to do 85 percent of.

"MS. TORRENCE: That offer was made prior to preliminary hearing, Your Honor. *There have been no discussions since then.* (Italics added.)

"THE COURT: Okay.

"[¶] Mr. Karwash, anything you want to put on the record concerning the status of the negotiation?

"MR. KARWASH: No, Your Honor."

We pause to note the italicized language, which Karwash did not correct on the record, is inconsistent with Karwash's declaration that there was further plea bargaining involving the 10-year counteroffer made at the time the amended information was filed. We will, nevertheless, accept for the sake of argument the gist of Karwash's declaration involving the plea bargaining.

In his declaration, defendant acknowledges he was told by the prosecutor he was facing a sentence of approximately 40 years to life in prison if convicted on all counts and enhancements. In his declaration, defense counsel Karwash acknowledges, as he did on the record, that "prior to and during the trial" he understood defendant faced a mandatory sentence of 30 years to life if convicted on counts 1 and 2 and their multiple victim enhancements, and if convicted on all counts would not be eligible for parole until he had served 40 years. He also acknowledges that before trial began his understanding "was confirmed on the record" by both Judge Kurtz and Deputy District Attorney Torrence.

Defendant claims he did not want to accept the plea offer of 24 years and, therefore, elected to go to trial. As noted, the jury convicted defendant of all counts and found the multiple victim enhancements to be true.

After the verdict, but prior to sentencing, defense counsel Karwash realized the multiple victim enhancements of sections 667.6, subdivision (d), and 667.61, subdivisions (c) and (e)(4) could not apply to defendant, because they did not apply to section 288.5 offenses until the statutes were amended in 2006—*after* the offenses alleged in counts 1 and 2 were committed—by adding section 288.5 to the offenses enumerated in subdivision (e) of section 667.6 and subdivision (c) of section 667.61. (See Stats. 2006, ch. 337, §§ 32, 33, pp. 2637–2641.)[8] Thus, argued Karwash, the enhancements were barred from applying to defendant under the Ex Post Facto Clause. The trial court agreed, and refused to impose an indeterminate sentence under section 667.61.

The trial court sentenced defendant to the middle term of 12 years on count 1, a consecutive one-third the midterm sentence of four years on count 2, a consecutive one-third the midterm sentence of two years on count 3, and a concurrent one-third the midterm sentence of two years on count 4, for a total of 18 years.

---

[8] As noted, the continuous sexual abuse of which defendant was convicted in counts 1 and 2 spanned the time frame from January 1, 1997 to December 31, 2005.

## II. DISCUSSION

We note at the outset the Attorney General, correctly, does not take issue with the trial court's conclusion the Ex Post Facto Clause barred the application of the 2006 amendments to defendant. Thus, defendant was erroneously advised by counsel and erroneously informed by the court and prosecutor that he faced a higher minimum sentence (approximately 40 years prior to parole eligibility) and a higher maximum sentence (an indeterminate life term) than he faced under the law applicable to his crimes when they were committed.[9]

Defendant contends the erroneous sentencing advice of counsel and the misinformation by the court and prosecutor denied him, respectively, the rights to the effective assistance of counsel and of due process of law.

To establish a claim of ineffective counsel, a defendant must show (1) that counsel's performance was deficient; and (2) that the deficient performance was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Anderson* (2001) 25 Cal.4th 543, 569 (*Anderson*).)

To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonable competence. (*Strickland, supra,* 466 U.S. at pp. 687–688; *Anderson, supra,* 25 Cal.4th at p. 569.) When a claim of deficient performance is made on direct appeal, and where the record does not show the reason for counsel's challenged failures of performance, we must affirm unless "there could be no satisfactory explanation." (*Anderson, supra,* at p. 569; *People v. Pope* (1979) 23 Cal.3d 412, 426 (*Pope*).)[10]

In cases where there might be such a satisfactory explanation (such as trial tactics) which is not revealed by the record, a defendant must raise the claim of ineffective

---

[9] Defendant contends his maximum sentence was 24 years. We need not review his calculations for purposes of this appeal. It suffices to observe he was materially misadvised and misinformed regarding his potential minimum and maximum sentences.

[10] *Pope* was overruled in part on an unrelated point in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, footnote 10 (*Berryman*). (*Berryman* was in turn overruled in part on yet another unrelated point in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

counsel by a habeas corpus proceeding and seek an evidentiary hearing to explore additional facts. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267; *Pope, supra,* 23 Cal.3d at p. 426.)

In the present case, both the record on appeal and the declaration of defense counsel in support of the petition for writ of habeas corpus show that Karwash had a material misunderstanding regarding the range of potential sentences facing defendant. With all respect to defense counsel, we must therefore conclude his performance was deficient. It is axiomatic that a defendant facing the decision whether to plead guilty or go to trial must have accurate information regarding his potential minimum and maximum sentences. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 937 (*Alvernaz*).) The decision whether to plead, thereby waiving the right to trial by jury and other rights and protections attaching to a trial, or face a trier of fact, must be made in the context of precise knowledge of the sentencing risks of going to trial. If the minimum and maximum sentences are inaccurately inflated, that necessarily taints the defendant's decision whether to give up his right to a jury trial and enter a plea, or take an informed chance of going forward with a jury trial.

Likewise, counsel conducting plea negotiations must, inter alia, assess applicable factual and legal defenses. (*People v. Brown* (1986) 177 Cal.App.3d 537, 549.) Here, Karwash should have investigated the date of the amendments to the enhancement statutes which rendered them applicable to section 288.5 offenses, thus investigating whether defendant had a defense based on the Ex Post Facto Clause.

But this is only one-half of the inquiry. Assuming a defendant has made a showing of deficient performance of counsel, we must, nevertheless, affirm the conviction unless the deficient performance has been prejudicial—i.e., that but for counsel's deficient performance it is reasonably probable that the result of the trial would have been different. (*Strickland, supra,* 466 U.S. at p. 694; *Anderson, supra,* 25 Cal.4th at p. 569.) "A reasonable probability is a probability [that is] sufficient to undermine confidence in the outcome." (*Strickland, supra,* at p. 694.)

11

The defendant must show prejudice by affirmative proof.  (*Strickland, supra,* 466 U.S. at p. 693.)  If defendant fails to meet his burden of showing prejudice, a reviewing court should reject his claim of ineffective counsel without even reaching the question whether counsel's performance was deficient.  (*Id.* at p. 697; *Alvernaz, supra,* 2 Cal.4th at p. 945.)

In the procedural context of this case, defendant must show there is a reasonable probability he would have received a more favorable result—i.e., he would have been offered a plea bargain, accepted it, and had it accepted by the trial court, and under the terms of that plea offer he would have received a sentence less than the 18 years he received after trial.  (*Lafler v. Cooper* (2012) ___ U.S. ___, 182 L.Ed.2d 398, 407; see *Alvernaz, supra,* 2 Cal.4th at pp. 936–941.)

Defendant points to his declaration, and that of defense counsel Karwash, to show he "was interested in reaching a negotiated disposition."  He argues that absent the misunderstanding regarding the applicability of the enhancements, it is "likely" the prosecution "would have offered a substantially more favorable plea bargain—almost certainly" less than the 18 years he received after trial.

In support of his habeas corpus petition, defendant presents the declaration of Michael P. Thorman, a criminal defense attorney of 38 years' experience who practices in Alameda County.  Thorman has "represented many clients in the courtroom of . . . Judge Robert Kurtz."  Thorman has "represented numerous defendants in connection with felony sex cases venued in the Alameda County Superior Court, Hayward Branch."  In each case, he "conducted plea negotiations with the Alameda County District Attorney's Office," and he "believe[s] that experience gives [him] a strong understanding of the potential outcomes a defendant in such a case could expect from the plea bargaining process."  Thorman "know[s]" Deputy District Attorney Torrence.

Thorman is familiar with the misunderstanding regarding the applicability of the enhancements.  He calculated defendant's maximum sentence as 24 years, and concluded the 24-year plea-bargain offer from Ms. Torrence "makes no sense" given that 24 years is the maximum, and that "[t]he Alameda County District Attorney's Office traditionally

has been willing to plea bargain in sex cases in an effort to save the victim from the stress and trauma created by having to appear as a witness at trial."

Thorman concludes: "[I]n my opinion, based on my experience as a criminal defender and trial attorney in Alameda County, if Ms. Torrence had understood . . . the true sentencing exposure [defendant] faced after trial, and the strong likelihood that fully consecutive sentences would not be imposed under the circumstances of this case, she would not have insisted on a plea bargain that would result in a 24-year prison term. Based upon my decades of experience negotiating felony cases—including sex cases—with the Alameda County District Attorney's Office, I believe that if Ms. Torrence had understood the true maximum penalty, she would likely have been willing to enter into a plea agreement that called for a prison sentence of less than 18 years and perhaps as low as 10 years.

"[¶] [B]ased upon my experience practicing before Judge Kurtz, I believe that, had the parties in [this] case presented Judge Kurtz with a plea agreement that called for a prison sentence of between 10 and 18 years in length, the judge would have accepted the plea."

We believe the declarations in support of the habeas petition, and the facts in the record on appeal, are insufficient to show a reasonable probability defendant would have received and accepted, and the trial court would have approved, a plea bargain offer of less than 18 years. In particular, Thorman's opinions are based on considerable speculation. While he knows Deputy District Attorney Torrence, and is familiar with the practices of the District Attorney's Office in general, he avers no facts about Torrence's professional standards or proclivities in plea negotiations in sex cases. He likewise avers no facts about the judicial standards of Judge Kurtz regarding his approval of plea agreements in sex cases. And it is sheer speculation any offer would have been less than the 18 years defendant received after trial.

We note that Torrence, in her sentencing memorandum, argued that even without the indeterminate sentence under the enhancement of section 667.61 defendant could, and should, be sentenced to 42 years. At the sentencing hearing, she noted the suffering of

13

the victims, stated she saw "no factors . . . in mitigation," and argued for "an absolute minimum" of 24 years. There is little, if anything, to show a reasonable probability of a less-than-18-year offer. Moreover, defendant may not have accepted *any* offer because he maintained his innocence: after trial he told the probation officer the victims were lying and, "I didn't accept an offer because I am not guilty." This claim of innocence "may detract from the credibility of a hindsight claim that a rejected plea bargain would have been accepted had a single variable (sentencing advice) been different." (*Alvernaz, supra,* 2 Cal.4th at p. 940.)[11]

Defendant cannot show prejudice and, thus, has not made a sufficient showing, on both direct appeal and by the habeas corpus petition, of ineffective assistance of counsel. Thus, we reject this contention on appeal and, by separate order, deny the habeas petition without issuing an order to show cause.

Defendant also contends the incorrect sentencing information given to him by the trial court and the prosecutor denied him his right to due process. A misunderstanding regarding sentence on the part of the court or the prosecutor can prevent a defendant "from obtaining a plea offer more favorable to him than the sentence he received after trial[, violating] notions of fundamental fairness assured by the due process clause of the Fourteenth Amendment. [Citation.]" (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 735 (*Goodwillie*).)

We must conclude the incorrect information given in this case—by mistake, we are sure, not intent—deprived defendant of due process of law. But, as with the question of ineffective counsel, the ultimate question is one of prejudice.

---

[11] This passage used as an example a defendant's protestations of innocence under oath. As noted, defendant did not testify. But *Alvernaz* states a reviewing court can take judicial notice of trial court proceedings, including a defendant's "trial stance." (*Alvernaz, supra,* 2 Cal.4th at p. 940.) In this case, that stance, as expressed to the probation officer and memorialized in an official document (the probation department sentencing report), was to reject a plea and go to trial because defendant believed he was innocent.

14

*Goodwillie* held such a due process deprivation was federal constitutional error under *Chapman v. California* (1967) 386 U.S. 18, 24 and, thus, the People bore the burden of showing the error was harmless beyond a reasonable doubt. (*Goodwillie, supra,* 147 Cal.App.4th at pp. 736–737.) In contrast, *People v. Miralrio* (2008) 167 Cal.App.4th 448 (*Miralrio*) respectfully disagreed with *Goodwillie* insofar as it placed the burden on the People to show harmless error. *Miralrio* reasoned the burden lay on the defendant, in part because anyone seeking error on appeal must show prejudice to obtain reversal of an opinion, and because it would be anomalous to place the burden on the defendant alleging ineffective counsel, but on the People for a due process violation, based on the same operative error: misrepresentation as to sentencing. (*Miralrio, supra,* at pp. 462–463.)

We need not resolve the conflict between the two cases. On this record, as we have discussed above, the lack of prejudice to defendant is manifest. There is simply no basis to conclude he would have received and accepted a court-approved plea offer of less than 18 years. The allocation of the burden of proof is essentially academic.

### III. DISPOSITION

The judgment of conviction is affirmed. By separate order filed this date, we deny the petition for writ of habeas corpus without issuing an order to show cause.

_____
Sepulveda, J.*

We concur:

_____
Margulies, Acting P.J.

_____
Banke, J.

* Retired Associate Justice of the Court of Appeal, First Appellate District, Division Four, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.