Filed 5/14/14  P. v. Villalobos CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247888 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA376852) |
| v. | |
| JUAN CARLOS VILLALOBOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald H. Rose, Judge.  Affirmed.

Jerome McGuire, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Juan Carlos Villalobos appeals from the judgment entered upon his jury conviction of premeditated attempted murder by use of a firearm and possession of a firearm by a felon, both committed for the benefit of a street gang, as well as his conviction of attempted second degree robbery and disobeying a court order. Defendant contends the evidence does not support the gang enhancements. He also argues the trial court made evidentiary errors, misadvised him about his sentence, and abused its discretion in denying his request to represent himself at sentencing. We find no reversible error and affirm the judgment.

**FACTUAL AND PROCEDURAL SUMMARY**

At about 2:36 p.m. on September 29, 2010, Giovany Guevara was walking towards his girlfriend's house on Wabash Street in East Los Angeles. He was approached by defendant, who asked Guevara where he was from, stated he was from "KAM," which stands for Krazy Ass Mexicans, and told Guevara he should not be walking in appellant's neighborhood. Guevara answered that he was from "nowhere," meaning he was not in a gang. Appellant pulled out a gun from his waistband, "racked it," and pointed it towards Guevara. He asked if Guevara had money. Guevara responded he did not and started walking away. He heard defendant ask someone on his phone twice, "Should I pop him?", and tell the person on the other end of the line to meet him around the corner. Guevara began to run. Defendant fired five or six shots. Guevara was hit in the stomach and back.

When he was interviewed at the hospital, Guevara described his assailant's age, weight and height, as well as his tattoos, specifically a tattoo of a woman on his neck. After defendant was identified as having such a tattoo, the investigating officer placed his photograph in a photographic line up, and Guevara identified him as the assailant.

On October 7, 2010, officers spotted defendant in an alley east of Soto Street between Malabar and Boulder Streets. One officer recognized one of defendant's companions as the girlfriend of a KAM member. The officers noticed that defendant grabbed his waistband. They followed him onto Boulder Street, where he crouched

2

behind a van and put the gun down. A nearby trashcan had graffiti associated with KAM. Defendant was arrested. The gun he discarded was loaded with 16 rounds.

Text messages on defendant's cell phone indicated that, on September 29, 2010, he was armed with a .380 caliber gun. Throughout that day, defendant exchanged messages referencing various KAM gang members; the presence of police ("huras"), enemies ("foos"), and rival State Street Gang members ("Stater Brothers") in the neighborhood; and "a war going on with these bitches." At about 2:33 p.m., defendant sent out a message stating he was "posted" at a store on Wabash and Stone Street, which meant defendant was at the store, "keeping an eye on the neighborhood." At 3:26 p.m., defendant messaged, "We left the hood 'cause I got into it just now in Wabash," meaning he and others had left KAM gang territory after he had gotten into some kind of confrontation on Wabash Street. The next message listed the names of KAM gang members, including one of defendant's brothers.

Defendant was charged with four counts: attempted first-degree murder, with an alleged personal use of a firearm (Pen. Code, §§ 664, 187, subd. (a); § 12022.53, subds. (b), (c), & (d)[1]) (count 1); possession of a firearm by a felon (former § 12021, subd. (a)(1), see now § 29800, subd. (a)(1)[2]) (count 2); attempted second-degree robbery (§ 664, 211) (count 3); and disobeying a court order, namely a 2003 KAM gang injunction (§ 166, subd. (a)(4)) (count 4). Gang enhancement allegations (§ 186.22) were attached to the first two counts. Defendant pled not guilty and denied the allegations. After an initial mistrial, a second jury convicted defendant as charged and found the allegations true.

Defendant was sentenced to 40 years to life in prison, plus three years and eight months, consisting of 15 years to life on count 1 and 25 years to life on the gun enhancement. Two other firearm enhancements were stayed. On count 2, he was

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] Former section 12021, subdivision (a)(1) was repealed as of January 1, 2012 and reenacted without substantive change as section 29800, subdivision (a)(1). (*People v. Sanders* (2012) 55 Cal.4th 731, 734, fn. 2.)

3

sentenced to three years consecutive, and the enhancement allegation was dismissed. On counts 3 and 4, the court imposed respectively an eight-month consecutive term and a six-month concurrent term.

Defendant filed this timely appeal.

## DISCUSSION

### I

The gang enhancement provision in section 186.22, subdivision (b)(1) applies to "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Appellant does not dispute he is a gang member, but argues that the evidence was insufficient to establish that the attempted murder and gun possession benefitted the KAM gang and were committed with the specific intent to promote or further criminal conduct by gang members.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758, 806.) We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*Ibid.*) If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' (*Ibid.*)" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

A. *Attempted murder*

Defendant contends the evidence is insufficient to support the gang enhancement on count 1 because the prosecutor did not allege that the intervening attempted robbery was gang related. The prosecutor also left the attempted robbery out of a hypothetical about the shooting, on which the gang expert based his opinion that the shooting benefitted KAM. Defendant claims there was no evidence he shot Guevara with a specific intent to promote, further, or assist in criminal conduct by gang members because the gang expert was not asked whether the hypothetical supported such a finding.

"Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' within the meaning of section 186.22(b)(1). [Citations.]" (*Albillar*, *supra*, 51 Cal.4th at p. 63.) Defendant incorrectly suggests that the element cannot be established by an inference. "'Expert opinion that particular criminal conduct benefited a gang' is not only permissible but can be sufficient to support the Penal Code section 186.22, subdivision (b)(1), gang enhancement. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048, citing *Albillar*, at p. 63.) The expert testified that the shooting, which occurred on a main street in KAM gang territory, would benefit KAM because it would terrorize the community, demonstrate the gang controlled the area, and discourage cooperation with police, thus allowing the gang to continue its free reign of terror. The expert testimony was sufficient to raise the inference that the shooting benefitted KAM.

Defendant concedes that the beginning of the encounter was gang-related, and that the evidence indicated KAM members were on the alert about an ongoing war with a rival gang. But he claims the intervening attempted robbery changed the nature of the encounter between defendant and Guevara because of the prosecutor's decision not to charge a gang-enhancement in relation to the attempted robbery and not to include it in the hypothetical on which the expert based his opinion. We cannot speculate about the reasons for the prosecutor's discretionary decisions, and those decisions are not evidence. (See *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 87 [so long as sufficient facts

5

demonstrate probable cause defendant committed a crime, prosecutor has discretion to determine what charges to bring].)  Moreover, by focusing on the attempted robbery to the exclusion of the larger context in which it occurred, defendant invites us to see the encounter in a light most favorable to him rather than to the judgment.  We cannot do that either.  (*Albillar*, *supra*, 51 Cal.4th at p. 59.)

Section 186.22, subdivision (b)(1) also requires that a defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."  Criminal conduct includes "the current offenses—and not merely *other* criminal conduct by gang members."  (*Albillar*, *supra*, 51 Cal.4th at p. 65.)  "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members."  (*Id.* at p. 68.)

The text messages defendant sent and received throughout the day of the shooting support the inference that he was in constant communication with others on gang-related matters.  Immediately before the shooting, he asked for instructions whether to shoot the victim, and agreed to meet the person who gave him the instructions around the corner.  After the shooting, defendant texted that he left the area in the company of others, and his subsequent message listed names of known KAM members.  Thus, although defendant was alone at the time of the shooting and the identity of the person from whom he sought instructions is unknown, the jury could infer that defendant committed the shooting while he was in close contact with other KAM gang members.

B.  *Firearm Possession*

Defendant argues that the gang enhancement on count 2 is not supported by evidence that his possession of a gun at the time of his arrest was gang related because the gang expert was not asked a hypothetical about possession of a firearm around Boulder and Soto Streets, the area where defendant was arrested on October 7, 2010.

The expert was asked if it would benefit the gang for its member to be "walking around Wabash, Stone, City Terrace area with a gun."  Part of the expert's answer was

specific to the area around Wabash Street, but he also testified generally that "walking around with a gun in your neighborhood is gangbanging" because it involves patrolling and protecting the gang's neighborhood. (See *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1505–1506 [evidence sufficient where expert identified gang-related purpose for possession of loaded weapon despite contrary evidence].)

The expert testified Soto Street was the western border of the KAM gang territory, and Boulder and Malamar Streets were within that territory. On the day of his arrest, defendant was spotted in an alley between Boulder and Malamar Streets, just east of Soto Street. He was arrested after he turned onto Boulder Street. His observed movements were all within KAM gang territory. Defendant's possession of a firearm in gang territory provides substantial evidence for the expert's opinion, even though the hypothetical referenced different streets in that territory. (Cf. *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199 [no evidence defendant was in gang territory, had gang members with him, or had any reason to use knife he carried for self-protection in gang-related offense].)

Defendant was not in the company of known gang members at the time of his arrest, but that fact by itself does not render the evidence speculative. The expert testified that possessing weapons was one of the primary activities of KAM, along with attempted murder and assault with a deadly weapon. A possession offense may be gang related if it is among the gang's primary activities. (See *People v. Sanchez* (2014) 223 Cal.App.4th 1, 12; cf. *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661–664 [no evidence connecting carjacking and armed robbery to defendant's gang]; *People v. Ramon* (2009) 175 Cal.App.4th 843, 853 [expert's opinion did not include "'possessing stolen vehicles'" among gang's activities].)

The gang enhancements are supported by substantial evidence.

## II

Defendant argues the trial court made erroneous evidentiary rulings regarding relevancy and Evidence Code section 352. We review such rulings for abuse of discretion. (*People v. Linton* (2013) 56 Cal.4th 1146, 1181.)

## A. *Evidence Regarding Defendant's Brother*

The trial court allowed the prosecution to use a case involving defendant's brother, Luis Villalobos, a known KAM member, as one of the predicate offenses required to prove defendant was a member of a criminal street gang. The expert also was allowed to testify that in a text message defendant mentioned his brother Anthony Villalobos, another known KAM member, along with other gang members with whom defendant left the area of the shooting.

Defendant argues this evidence which portrayed defendant as a member of "a gang family," was more prejudicial than probative, and should have been excluded under Evidence Code section 352 because it was "essentially prohibited character evidence," or because it established his guilt by association. In particular, he argues that the evidence of his brother Luis's gang-related crimes would lead to the improper inference that defendant was prone to commit crimes because "blood is thicker than water."

Defendant cites no authority prohibiting the use of such evidence, and we have found none. On the contrary, even defendant's own gang-related crimes may be used as predicate offenses. As the court explained in *People v. Tran* (2011) 51 Cal.4th 1040, 1048 (*Tran*), "because the prosecution is required to establish the defendant was an active participant in a criminal street gang and had knowledge of the gang's criminal activities, the jury inevitably and necessarily will in any event receive evidence tending to show the defendant actively supported the street gang's criminal activities. That the defendant was personally involved in some of those activities typically will not so increase the prejudicial nature of the evidence as to unfairly bias the jury against the defendant." Evidence that defendant's brother committed a predicate crime is no more prejudicial than evidence that defendant did so himself.

Here, the expert testified that he had arrested Luis Villalobos for possession of a loaded firearm in KAM territory and in the company of KAM members, that Luis was a self-admitted KAM member, and that he was defendant's brother. Luis's crime was a predicate offense necessary to establish KAM was an active criminal street gang. The crime of possession is not unduly inflammatory, and the reference to the familial

8

relationship was fleeting.  Moreover, the jury was provided a limiting instruction not to conclude from the evidence of gang-related activity that defendant is of "bad character" or has a "predisposition to commit crime."  The trial court did not abuse its discretion in admitting the evidence.  (See *Tran*, *supra*, 51 Cal.4th at p. 1050.)

### B.  *Question about Gun Possession*

Defense counsel asked the expert whether "many people in that area have firearms."  The court sustained the prosecutor's relevance objection.  Defense counsel did not explain the relevance of this question.  Defendant now argues evidence that many people in his neighborhood, even those who have no gang connection, carry weapons for protection would have weakened the inference that defendant's firearm possession was gang related.  Only relevant evidence is admissible, and evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, §§ 210, 350.)  Evidence that individuals unaffiliated with a gang carry weapons for self-protection does not logically tend to prove that gang members, such as defendant, carry weapons for the same purpose.  The court did not abuse its discretion in sustaining an objection to a question intended to elicit irrelevant evidence.

### C.  *Cumulative Error*

Because we have rejected defendant's individual claims of error, there is no cumulative error.  (*People v. Tully* (2012) 54 Cal.4th 952, 1020.)

III

Defendant argues he was denied due process when the court misadvised him of the maximum sentence he faced if he rejected the prosecution's plea bargain offer.  A court's misrepresentation as to sentencing that prevents a defendant "from obtaining a plea offer more favorable to him than the sentence he received after trial" violates due process and is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24.  (*People v. Goodwillie* (2007) 147 Cal.App.4th 695, 735–737 (*Goodwillie*) [burden of proof on prosecution], but see *People v. Miralrio* (2008) 167 Cal.App.4th 448, 462–463 [burden of proof on defendant].)

9

Defendant claims the court misadvised him about his maximum exposure during the plea bargain discussion after the initial mistrial. At that time, the court estimated defendant's sentence on count 1 would be 25 or 35 years to life, which was lower than the 40-year-to-life term the court eventually imposed. The court was uncertain about the facts of the case and did not express an opinion on defendant's exposure on the other counts.

Although incorrect, the court's estimate did not bring "the plea bargaining process to a halt." (*Goodwillie*, *supra*, 147 Cal.App.4th at p. 735.) After jury selection began for the second trial, the prosecutor advised the court the defense had approached him about a plea, and the prosecutor had offered 39 years, which was consistent with a prior offer in the "high 30's." At that point, the trial court explained to defendant that count 1 carried the possibility of a life sentence, and he would serve a *minimum* of 32 years before he would be eligible for parole, so the prosecutor's offer was "not much above the minimum sentence." The court suggested that the sentence could be as high as 42 years to life on count 1 alone, or about 40 years, and defendant "could very well remain [in prison] for the rest of [his] life".

The court's calculation of the maximum sentence on count 1 was incorrect, as it was based on the standard seven-year minimum before eligibility for parole, plus a 25-year minimum on the gun enhancement, and a 10-year minimum on the gang enhancement. Until sentencing, the court was unaware of the 15-year minimum term before a defendant would be eligible for parole in a gang-related felony (§ 186.22, subd. (b)(5)), which it ultimately imposed on count 1, along with a 25-year-to-life term on the gun enhancement, for a total of 40 years to life on that count. Nevertheless, the maximum exposure on count 1 of which defendant was advised (42 years to life) was slightly higher than the sentence he received after trial on that count.

Defendant incorrectly claims that the court consistently advised him that his maximum exposure was from 25 years to life to 35 years to life, and that the 32-year-to-life estimate "split the difference." The record does not bear out the claim that defendant was prejudicially misadvised about his maximum sentence on count 1, and the court

10

never purported to advise him on his maximum exposure on all counts. Under the circumstances, it cannot be said that the court's representation about the sentence caused defendant to turn down the prosecutor's offer of 39 years to life.

IV

Defendant contends he should have been allowed to represent himself at sentencing. He relies on *People v. Miller* (2007) 153 Cal.App.4th 1015 (*Miller*). The *Miller* court held that the defendant had "an absolute right to represent himself at sentencing" because his request to do so was made two months before the sentencing hearing and was therefore timely. (*Id*. at p. 1024.) The sentence was reversible per se because the trial court treated the request as untimely. (*Ibid*.)

Here, at the original sentencing hearing on March 6, 2013, defendant asked to represent himself only on a motion for new trial, and asked for a continuance to prepare the motion. The court denied the requests. Sentencing was continued to March 25, 2013 to give the attorneys time to look into the effect of section 186.22, subdivision (b)(5) on the sentence on count 1. The court directed defense counsel to discuss with defendant his request for a motion for a new trial. During the March 25 hearing, defendant asked to represent himself at sentencing because counsel had not spoken to him about filing a new trial motion. Counsel stated he had not found grounds for such a motion. The court denied defendant's request and proceeded to sentence him.

*Miller*, *supra*, 153 Cal.App.4th 1015 is distinguishable. The request for self-representation in that case was made after a motion for new trial had been made and denied, and sentencing was all that remained. (*Id*. at p. 1024.) *Miller* does not require that a limited request to represent oneself on a motion for new trial be treated as a request to represent oneself at sentencing. The court explained that motions for self-representation made during trial are subject to the trial court's discretion because of the "potential disruption of proceedings already in progress." (*Ibid*.) Although sentencing proceedings are separate from the trial, the court acknowledged that, to be timely, "the request for self-representation at sentencing must be made within a reasonable time prior to commencement of the sentencing hearing." (*Ibid*.) Thus, defendant's request to

11

represent himself partway through the sentencing hearing on March 25 was untimely under *Miller*, and the court had discretion to deny it. (See *People v. Doolin* (2009) 45 Cal.4th 390, 455, fn. 39 [untimely request to represent oneself at sentencing subject to court's discretion].)

Defendant argues that the request was timely because defense counsel had failed to meet with him between the two hearings as directed by the court, and defendant did not understand the effect of section 186.22, subdivision (b)(5) on his sentence until the March 25 hearing. But at the March 6 hearing the court already had put defendant on notice he might be subject to 15 years to life in prison on count 1. Defendant's complaints at both hearings had to do only with the motion for new trial he wanted to file, and it is unclear that he actually wanted, let alone was prepared, to represent himself with regard to sentencing. The trial court did not abuse its discretion in denying defendant's request to represent himself.

### DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.                    EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.