Filed 9/30/14  P. v. Clift CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C072195 |
| Plaintiff and Respondent, | (Super. Ct. No. CM034332) |
| v. | |
| DANIEL REY CLIFT, | |
| Defendant and Appellant. | |

Defendant Daniel Rey Clift was charged with assault with a deadly weapon with enhancements for a prior prison term and personally inflicting great bodily injury. Defendant rejected offers for a plea agreement and the People filed an amended information adding strike, serious felony, and two additional prior prison term allegations.  Defendant was convicted in a court trial of assault with a deadly weapon with the great bodily injury enhancement.  The trial court sustained the prior prison term, strike, and serious felony allegations and sentenced defendant to 17 years in state prison.

1

On appeal, defendant contends: (1) counsel was ineffective by misadvising him of the maximum sentence he faced if convicted; (2) the trial court deprived him of due process by misadvising him of the maximum sentence; (3) the prosecutor's failure to correct this erroneous information constituted prejudicial misconduct; and (4) the inaccurate advice given by the trial court, counsel, and the prosecutor deprived him of due process. The People assert that the prior prison term should have been stayed. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

In April 2011, defendant and Kristen Day lived together, but their romantic relationship was ending. On April 7, 2011, Day went out with her friend Lauren Wilson,[1] Lauren's boyfriend Grant Parks, and Lauren's brother Kyle Wilson, who was home on leave from the United States Marine Corps. Kyle knew Day through his sister but was not romantically involved with her. The group had some food and stopped at several bars before returning to Parks's apartment.

Defendant was waiting outside for Day when they arrived at the apartment. Defendant got angry when Day would not go home with him. The group told defendant to leave because he was being obnoxious. Before leaving, defendant said he would be back and told Kyle to watch his back.

Lauren and Parks went to bed after defendant left. Later, Kyle went to sleep on a couch while Day was on another couch. Kyle woke up when he heard the front door getting kicked in. Before Kyle knew what happened, defendant was cutting and stabbing him. Kyle defended himself and tried to get the knife away. They wound up going out

---

[1] As there are two witnesses surnamed Wilson in this case, we refer to them by their first names to avoid confusion.

the front door, where defendant left after stabbing Kyle about 14 times. According to Kyle, the incident lasted "no more than 30 seconds."

Day testified that she drank a lot that night and blacked out; she did not remember leaving the last bar or the stabbing at Parks's apartment. Day told a police officer that defendant and Kyle left the apartment and Kyle came back bloody.

Parks "heard loud screaming." He went to the den, where he saw Kyle, who had "blood on him." Day, who had been on the futon, was now on the landing outside the apartment. Lauren was awakened by "a loud crash in the living room." Parks came into the room and told her Kyle was bleeding and needed to go to the hospital.

Kyle was treated for his injuries at the hospital. He estimated that he sustained about 13 lacerations, a stab wound, and required about 56 stitches. He still had scarring but no permanent injuries.

Defendant was arrested as he left his apartment on the morning of April 7, 2011. In the front pocket of his sweatshirt were a set of keys, a cell phone, and a knife. The phone was used to send several texts to a "K day" that day. The first text was sent at 12:40 a.m. and asked the recipient, "Can you please say something to me." At 1:13 a.m., defendant texted, "So what's up? Where are you." At 1:17 a.m., he sent, "I love you, beautiful. What bar are you at?" At 1:24 a.m., he texted, "I be stop tripping a little if you did what you said you would do, that and talk to me. You said you would. Let me know where you were. Where are you, beautiful?"

After sending several other messages, defendant sent the following to "K day" at 2:49 a.m., "Just stay there and get pimpt [*sic*] out to Luaran's [*sic*] brother, like you want to." Defendant sent another text at 2:52 a.m. that stated, "I had dinner and a movie planned for us, but you would want to lie to me and cheat on me instead. Thanks." He texted at 3:12 a.m., "Where are you sucking on him?" At 4:17 a.m. he sent, "Yeah, go make out and suck on him some more, you lying, cheating bitch." And at 4:30 a.m.,

3

defendant wrote the final text, "Yeah, got nothing to say after you have been caught cheating." There were no responses to any of the texts.

*The Defense*

Testifying on his own behalf, defendant[2] said he drove Day to Parks's apartment at about 8:30 p.m. She was to go to a bar with Lauren. Day would call to tell defendant where she was so he could pick her up later. He started texting and calling her when he did not hear from her.

Defendant went to Parks's apartment to pick up Day. She was not ready to go home and said she did not hear her phone when he called. Defendant had a drink with Kyle but they got into an argument. Defendant finished his beer and suggested that Day might be ready to go home; Kyle said, "[h]old on," went into the apartment, and shut and locked the door.

Defendant looked through the window, where he thought he saw Kyle and Day kissing. He knocked on the door and asked, "What the 'F' are you guys doing?" Kyle opened the door and told defendant, "You need to leave. She's not your girlfriend." Before defendant left, he told Day he loved her and would be back later.

Defendant returned to Parks's apartment about two hours later. The door was ajar and he walked in. Kyle and Day were sitting on the couch; defendant asked if she was ready to leave, but Kyle interjected, "I told you to leave, and that she wasn't leaving." After more words were exchanged, Kyle shoved defendant. After defendant shoved back, Kyle put him in a headlock. Defendant was swinging and yelling, but could not breathe. He pulled out a knife to get Kyle off of him, but did not recall stabbing Kyle. Defendant was just swinging in hopes Kyle would let go. After Kyle let go, defendant left the apartment. He was injured on his arm, chest, and neck.

---

[2] Defendant also testified to prior convictions for possession of marijuana for sale and felony assault.

*Plea Negotiations*

Defendant was initially charged with assault with a deadly weapon with enhancements for a single prior prison term and personally inflicting great bodily injury. These were the only charges pending at the December 6, 2011, trial readiness conference. The trial court told defendant the conference was to determine whether a plea agreement could be reached. The court informed defendant he was charged with assault with a deadly weapon, a serious felony and a strike, which carried a maximum term of four years, a prior prison term allegation for a prior drug conviction, which carried an additional year, and a personal infliction of great bodily injury allegation, which carried a three-year term, for a total maximum term of eight years. The trial court additionally said the great bodily injury allegation would turn the crime into a violent felony, thus requiring defendant to serve a minimum of 85 percent of his sentence rather than the standard 50 percent.

The trial court next told defendant the district attorney believed his prior Penal Code section 245, subdivision (a)(1)[3] conviction "may be a Strike." Defendant replied, "That is incorrect." The court said it did not know, and it was just told what the district attorney thinks it might be. The trial court explained to defendant, "if it's a Strike, and they can allege it at any time, and then if the jury finds it to be true and convicts you of this new 245, let me make sure I got my math right, 4 years for the new assault with a deadly weapon, times two, you double it when you have a Strike, that turns into 8 years. Then you have the prior prison term which is 1 year. And then you've got the 3-year great bodily injury enhancement. So that totals 12 years at 85 percent."

The trial court reiterated it did not know whether the assault prior was a strike and asked the prosecutor why he thought so. The prosecutor replied, "Well, we actually did

---

**3**      Undesignated statutory references are to the Penal Code.

5

look at it. Alleged a knife or a deadly weapon, but also at the same time it alleged a force likely. If I recall correctly, I believe the plea agreement also marked a Strike, correct me if I'm wrong."

Defense counsel stated her belief that the plea form was not marked that way. The defense ordered a transcript but did not know whether the plea transcript arrived. She continued, "My client is indicating he believed at the time he was told it would not be a Strike, however, the People believe there may be enough information in the Probation Report/transcript to show whether or not that would be a Strike."

The trial court said, as charged, the worst case for defendant was an eight-year term, and if the prior was a strike, "then it could potentially go up to 12 years at 85 percent. I don't know." It asked the prosecutor for his offer. The prosecutor replied, the section 245, subdivision (a)(1) charge plus the prior prison term. The trial court told defendant the worst case under the plea would be four years for the charge and one for the prior, for a total of five years versus the eight years as charged. Defense counsel interjected that the defense believed it was possible for defendant to get half time credits under the plea agreement. The trial court then explained that with 242 days of custody he already served, he would get an additional 242 days of conduct credits under the deal, giving him a total of 22 months in actual custody.

After determining defendant did not need further explanation or additional time to talk to counsel, the trial court asked defendant for his decision. Defendant replied, "Refuse."

The trial court ordered a transcript of the plea and sentencing for the prior assault conviction and ended the hearing.

Another settlement hearing took place on January 31, 3012. The trial court reiterated that the worst consequence for defendant for the case as charged was an eight-year term for the assault with a deadly weapon and the prior prison term and great bodily injury allegations, with only 15 percent credits as the crime would be a violent felony.

6

After getting both the prosecutor and defense counsel to agree this analysis was correct, the trial court asked for the People's offer. The prosecutor said defendant would plead to the assault crime with a stipulated four-year upper term and admit the prison prior, for a total stipulated five-year term.

The trial court found out from the defense and prosecution that there would be no prior strike enhancement under the plea, the assault with a deadly weapon would be a strike, and defendant would be eligible for 50 percent credits against his state prison sentence. Taking defendant's presentence credits into account, the trial court calculated that defendant would serve about two years of actual time under the plea and over six years for the maximum for the crimes as charged.

The prosecutor told the trial court the offer was good for the hearing and would be withdrawn at its conclusion. The trial court determined defendant did not need extra time to consider the offer and asked defendant for his decision. Defendant replied, "I don't want to take that offer." The trial court then set the matter for trial and concluded the hearing.

*The Prior Strike*

The People filed an amended information on March 8, 2012, adding serious felony and strike allegations based on the prior section 245, subdivision (a)(1) conviction and two additional prior prison term allegations.

At the bifurcated trial on the priors, the People submitted the change of plea form for the prior, which showed defendant pleading to a single count of "PC 245 (a)(1) a felony." The box indicating this was a section 667.5, subdivision (c) violent felony was not checked. In addition, the part of the form stating this was a serious or violent felony was checked, but the part stating it was a strike was not checked. The information for the prior conviction stated defendant was charged with "assault with a deadly weapon, by means likely to produce GBI." (Capitalization and bolding omitted.) The Welfare and Institutions Code section 3051 commitment order likewise described the offense as

7

"Assault with a deadly weapon by means likely to produce a great bodily injury." (Capitalization omitted.) The probation report for the prior stated that defendant attacked the boyfriend of his ex-girlfriend. Defendant broke into the man's home and confronted him in the bathroom, where defendant punched him in the head three times before producing a knife and stabbing at the man. When another person grabbed defendant and prevented him from using the knife, the victim ran into an adjoining apartment. The victim sustained no injuries other than a scraped elbow.

At the trial on the priors, defense counsel said defendant told him he was never told the offense would be a strike when he pled to the prior section 245 charge, and the offense he pled to could not be a strike as there was no "great bodily injury or validation that a deadly weapon was used." Defendant also told counsel the knife was in the possession of the other party at the time of the incident in the assault prior. The trial court rejected the defense claims and sustained the strike, the serious felony, and the prior prison term allegations.

DISCUSSION

I

*Ineffective Assistance Of Counsel*

Defendant contends trial counsel rendered ineffective assistance by failing to apprise him that he faced a maximum term of 17 years in state prison rather than the eight years as charged. We agree counsel rendered substandard assistance but defendant has failed to show prejudice.

Criminal defendants are constitutionally entitled to effective assistance of counsel during the pleading and plea bargaining stages of a criminal proceeding. (*In re Resendiz* (2001) 25 Cal.4th 230, 239, disapproved on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370 [176 L.Ed.2d 284, 296]; *In re Alvernaz* (1992) 2 Cal.4th 924, 936-937 (*Alvernaz*).)

To establish ineffective assistance of counsel, defendant must show that counsel's performance: (1) fell below an objective standard of reasonableness under prevailing professional norms, and (2) that defendant suffered prejudice as a result. (*In re Resendiz, supra*, 25 Cal.4th at p. 239; *Alvernaz, supra*, 2 Cal.4th at pp. 936-937.) Where a defendant contends that his counsel's ineffective representation results in the rejection of an offered plea bargain, and in the defendant's decision to proceed to trial, defendant must also demonstrate that, but for the deficient representation, it is reasonably probable that defendant would have accepted the proffered plea bargain, and both the prosecutor and the trial court would have approved the plea bargain. (*Missouri v. Frye* (2012) 566 U.S. ___ [182 L.Ed.2d 379, 392]; *Alvernaz,* at p. 937.)

According to defendant, there was no possible tactical reason for counsel not to advise defendant that he was subject to a possible 17-year term. Defendant notes trial counsel has a duty to investigate the law and facts of a case when necessary. (*In re Marquez* (1992) 1 Cal.4th 584, 602-604.) Since trial counsel was aware of the change of plea form at the settlement conferences, defendant contends counsel should have seen the box stating the conviction was a serious felony was checked, with defendant's initials on the item. Although there was no indication defendant had been advised the crime was a strike when he made the plea, defendant correctly notes that a trial court is not required to advise a defendant of the possibility of increased punishment as a result of a subsequent conviction. (*People v. Crosby* (1992) 3 Cal.App.4th 1352, 1355.) From this, defendant concludes counsel was deficient in not advising defendant that the prior conviction was in fact a strike.

The record indicates the change of plea form and the information for the prior conviction were available to the prosecution and defense at the settlement conferences.[4]

---

[4] At the December 6, 2011 conference, the prosecutor refers to the information alleging both assault with a deadly weapon and by means likely to produce great bodily

Although the charge for the prior offense is ambiguous declaring the crime assault with a deadly weapon and by means likely to produce great bodily injury, any ambiguity is resolved by the plea form, which states the crime is a serious or violent felony. While the trial court tried to give defendant such an assessment, its advice was inaccurate as it considered only the consequence of a strike allegation and omitted any possibility of a serious felony allegation arising from the same offense being filed and sustained. The trial court therefore mistakenly told defendant he was subject to a maximum term of 12 years if the prior was a strike instead of the 17-year sentence he faced if the strike and serious felony allegations were filed and sustained.[5] Counsel's failure to correct the trial court's mistake and to advise her client that the prior was both a serious felony and a strike fell below the objective standard of reasonable representation.

Relying on federal circuit cases, defendant claims the disparity between his actual maximum exposure and the five-year term offered by the prosecution is evidence of prejudice. Those cases do not address the issue before us.

In *Smith v. U. S.* (6th Cir. 2003) 348 F.3d 545, the case was remanded for a new evidentiary hearing because there was evidence that defense counsel did not advise the defendant about the terms of the plea deal that had a maximum sentence of about 20 months or of the possible 262-month term defendant was subject to if convicted on all charges. (*Id.* at pp. 548-549, 553-554.) *U. S. v. Gordon* (2d Cir. 1998) 156 F.3d 376 (*per*

---

injury and the strike section of the change of plea form being marked, while defense counsel claims the strike section was not marked.

[5] As charged, defendant faced a potential sentence of 19 years, four years for the assault doubled to eight for the strike, three years for the great bodily injury allegation, five years for the serious felony allegation, and three years for the three prison priors. (§§ 245, subd. (a)(1), 667, subds. (b)-(i), 667.5, subd. (b), 1192.7, subd. (c)(8).) However, the trial court declined to apply two of the prior prison terms, correctly finding that they could not apply to defendant's sentence. (See Part II, *post*.) Accordingly, we agree with defendant's assessment that he faced a maximum prison term of 17 years.

*curiam*) was an affirmance of the district court's finding that the defendant would have accepted the plea offer had he been accurately advised of his maximum exposure if he rejected the plea offer. (*Id.* at pp. 377, 378.) The district court's finding was based on the defendant's own statements that he would have accepted the offer had he known his exposure and counsel telling defendant his maximum exposure was 120 months when it in fact was 260 months. (*Ibid.*)

*U. S. v. Day* (3rd Cir. 1992) 969 F.2d 39, also cited by defendant involved defendant's appeal from the district court's summary denial of his habeas corpus petition. (*Id.* at p. 40.) The defendant alleged that the United States offered him a plea bargain with a five-year sentence, counsel told him he had a maximum exposure of 11 years, counsel did not discuss the considerable strength of the prosecution's case with him, his actual maximum exposure for going to trial was 327 months, he received a 262-month sentence, and he would have accepted the offer had he known the actual risk of going to trial. (*Id.* at pp. 40-42.) The Third Circuit Court of Appeals reversed and remanded for a habeas hearing on the allegations, finding prejudice from counsel's actions "theoretically possible." (*Id.* at p. 45.)

Unlike this appeal, the cases cited by defendant all had evidentiary hearings on the ineffective assistance claim or had to assume the facts alleged by the defendant were true. Unsurprisingly, these cases all contain more evidence supporting prejudice than a simple disparity between the sentence in the offered plea and the maximum exposure if the defendant decided to go to trial. Even if these federal circuit court cases were binding on us (see *People v. Williams* (1997) 16 Cal.4th 153, 190 [decisions of a lower federal court not binding on California courts]), they are inapposite.

"In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable

11

consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement--after trial, conviction, and sentence--that with competent advice he or she *would* have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence." (*Alvernaz*, *supra*, 2 Cal.4th at p. 938.)

The offer was accurately communicated to defendant. There was a large disparity between the plea proposal, five years at 50 percent time, versus defendant's exposure for going to trial, 17 years at 85 percent time. However, this disparity cannot be examined out of context. Where, as here, the defendant was incorrectly advised as to the possible consequences of rejecting the plea offer, the advice given to defendant is essential to determining whether it is reasonably probable that he would have accepted the offer if correctly advised. While there was a substantial disparity between the offer and defendant's ultimate exposure, there was a substantial (albeit smaller) disparity between the offer and what defendant was told to be his potential worst case exposure, 12 years at 85 percent. Although defendant's actual exposure for going to trial was one-third larger than what he was advised, defendant nonetheless rejected the plea offer even after being advised by the trial court that he faced a potentially much more severe punishment if he went to trial.

The final factor mentioned in *Alvernaz* also weighs against a finding of prejudice. Defendant never indicated a willingness to accept a plea offer. (See, e.g., *Alvernaz*, *supra*, 2 Cal.4th at p. 939 [giving example of the defendant countering a two-year plea offer with a one-year offer].) Throughout the trial he manifested a belief that the prior conviction was not a strike, asserting this at the settlement conferences and at the trial on the prior. There is also evidence that defendant believed he was innocent of the current

charges; the probation report contains his letter to the trial court in which defendant continued to profess his innocence.

Lacking an evidentiary hearing on his contention, it is no surprise that defendant cannot prove he was prejudiced by counsel's error. While defendant might be able to prevail on a habeas corpus petition, he has not established prejudice in this appeal.

II

*The Trial Court's Misstatement Of The Maximum Term*

Defendant contends the trial court's erroneous advice regarding his potential sentence if he rejected the plea offer constitutes a violation of due process. Citing *People v. Goodwillie* (2007) 147 Cal.App.4th 695, defendant contends the trial court's error is subject to the harmless-beyond-a-reasonable-doubt standard of *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].

*Goodwillie* held that the trial court's and prosecutor's misstatement of the consequences of rejecting the offered plea constituted a due process violation that was subject to the *Chapman* standard for harmless error. (*People v. Goodwillie, supra*, 147 Cal.App.4th at pp. 734-736.) This court subsequently rejected *Goodwillie*. (*People v. Miralrio* (2008) 167 Cal.App.4th 448, 460.) As with cases where defense counsel incorrectly advises the defendant on the consequences of rejecting a plea offer, where a defendant is misadvised by the trial court as to his potential maximum sentence if he went to trial, he is entitled to relief only if he establishes a reasonable probability that he would not have entered his guilty plea had the trial court provided proper advice. (*Id*. at pp. 459-463.)

Defendant asserts *Miralrio* was wrongly decided and asks us to reject it and adopt *Goodwillie*. We decline the invitation. In *Miralrio*, the court placed the burden of proving prejudice on defendant based on the sound observations that the party seeking to overturn a judgment generally bears the burden of proving prejudice (Cal. Const., art VI, § 13), misstatements on the consequences of rejecting the plea do not fall into the rare

13

class of cases where error is presumed, the burden of proving error is properly placed on defendant as "the defendant is the only one who knows whether he would have accepted the plea bargain absent the misadvisement," and placing the burden on defendant is consistent with the standard applied to misadvisement by defense counsel. (*People v. Miralrio*, *supra*, 167 Cal.App.4th at p. 463.) We agree with this reasoning and therefore apply *Miralrio* to defendant's contention.

Having already found defendant failed to prove prejudice from the misadvisement of the potential consequences of rejecting the plea, we reject defendant's contention.

### III

### *Prosecutorial Misconduct*

Defendant next contends the prosecutor's failure to correct the trial court's error regarding the consequences of rejecting the plea offer constituted prosecutorial misconduct that violated defendant's right to due process. *Miralrio* applied the *Alvernaz* standard of prejudice to misadvisement by the trial court and the prosecutor. (*People v. Miralrio*, *supra*, 167 Cal.App.4th at pp. 459-460, 464.) Assuming the prosecutor's failure to correct the trial court's error constitutes misadvisement, we apply *Miralrio* to the contention. Having found in Part I that defendant failed to carry his burden of establishing prejudice from the misadvisement, we reject defendant's claim of prosecutorial misconduct.

### IV

### *Aggregate Misadvisement*

Defendant's final contention is that the combined errors of trial counsel, the trial court, and the prosecutor constitute a due process violation because he was never properly advised regarding his exposure for rejecting the plea. This case involved a single error with many sources. Defendant has the burden of establishing prejudice from that error regardless of the number of actors involved in its perpetration. Since defendant failed to establish prejudice from the error, we reject this contention.

14

V

*Prior Prison Term*

The People contend the trial court erred in imposing prior prison term and serious felony enhancements based on the same conviction -- defendant's prior conviction for assault with a deadly weapon.

The amended information alleged three prior prison term enhancements based on convictions for the prior strike offense, the 2005 conviction for assault with a deadly weapon, a 2006 conviction for possession of marijuana for sale, and a 2004 conviction for possession of a controlled substance. The trial court sustained all three allegations. At sentencing, the trial court stayed two prior prison term enhancements, and imposed only one prior prison term enhancement.

The People are wrong, as it is clear that the prior prison term enhancement imposed was based on a different conviction than the assault with a deadly weapon conviction that was used for the prior serious felony enhancement.

DISPOSITION

The judgment is affirmed.

ROBIE                    , J.

We concur:

BLEASE              , Acting P. J.

MAURO              , J.

15